**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT ANDREW SAULTZ, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | :  Docket No. 19-cv-05778-JMY |
| ATTORNEY GENERAL | : |
| JOSH SHAPIRO, et al., | : |
| | : |
| Defendants. | : |

## <u>ORDER</u>

AND NOW, this _____ day of _____ 2021, upon

consideration of the Motion of Defendants the City of Bethlehem, Mayor Robert Donchez,

Police Chief Mark A. Diluzio, Sgt. Michael Leaser, and Det. Dawn Heuser ("the Bethlehem

Defendants") for Summary Judgment and their Brief in Support thereof, as well as any response

thereto, it is hereby ORDERED and DECREED that summary judgement is GRANTED in favor

of the Bethlehem Defendants and against Plaintiff, and all of Plaintiff's claims against the

Bethlehem Defendants are dismissed *with prejudice.*

BY THE COURT:

_____

Judge John Milton Younge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT ANDREW SAULTZ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Docket No. 19-cv-05778-JMY |
| | : | |
| ATTORNEY GENERAL | : | |
| JOSH SHAPIRO, et al., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS, CITY OF BETHLEHEM, MAYOR ROBERT DONCHEZ,
POLICE CHIEF MARK A. DILUZIO, SGT. MICHAEL LEASER,
AND DETECTIVE DAWN HEUSER'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Defendants the City of Bethlehem,

Mayor Robert Donchez, Police Chief Mark A. Diluzio, Sgt. Michael Leaser, and Det. Dawn

Heuser (collectively "the Bethlehem Defendants"), by and through their attorneys, MacMain,

Connell, and Leinhauser, LLC, respectfully move this Honorable Court for an entry of summary

judgment and for the dismissal of all of Plaintiff's claims against the Bethlehem Defendants,

*with prejudice*.

As more set forth in the supporting Memorandum of Law, Plaintiffs claims fail because:

(1) neither Sgt. Leaser nor Det. Heuser arrested Plaintiff; rather, they permissibly detained

Plaintiff based upon information provided by Co-Defendant Special Agent Eric Barlow until

Agent Barlow arrived on scene and arrested Plaintiff; (2) Plaintiff has failed to establish any facts

to support a conspiracy claim; (3) Sgt. Leaser and Det. Heuser are entitled to qualified immunity;

(4) Plaintiff's Fourteenth Amendment due process claim fails because his claims are more

properly brought under the Fourth Amendment; (5) Plaintiff has failed to present any evidence

whatsoever to establish supervisory liability on the part of Mayor Donchez or former Chief of

Police Mark DiLuzio; (6) Plaintiff has failed to present any evidence whatsoever to establish that

the City had a policy, practice or custom of violating citizen's constitutional rights or failed to

train, supervise, or discipline its officers; (7) Plaintiff's state claims for intentional infliction of

emotional distress fails as there are no underlying violations and Plaintiff has not established that

he suffered emotional distress as a result of the Officers' actions; (8) there is no private right to

recovery under the Pennsylvania Constitution; and (9) Plaintiff's claim for punitive damages

must be dismissed, because he has presented no evidence of malice or ill will of the Bethlehem

Defendants.

The grounds of this Motion are fully set forth in the accompanying Memorandum of Law

in Support of the Bethlehem Defendants' Motion, which is incorporated herein by reference as if

set forth fully at length.

WHEREFORE, Defendants the City of Bethlehem, Mayor Robert Donchez, Police Chief

Mark A. Diluzio, Sgt. Michael Leaser, and Det. Dawn Heuser respectfully request that this

Honorable Court grant their motion and enter judgment in their favor and against Plaintiff, with

prejudice.

**MacMain, Connell & Leinhauser, LLC**

Dated: <u>December 16, 2020</u>           By:     <u>*/s/ David J. MacMain*              </u>
                                                David J. MacMain
                                                Janelle E. Fulton
                                                Attorney I.D. No. 59320/80027
                                                433 W. Market Street, Suite 200
                                                West Chester, PA 19382
                                                *Attorneys for Defendants City of Bethlehem,*
                                                *Mayor Robert Donchez, Chief Mark A. Diluzio,*
                                                *Sgt. Michael Leaser, and Det. Dawn Heuser*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of December 2020, a copy of the foregoing was

served upon the following via ECF notification:

Fredrick E. Charles, Esquire
441 Linden Street
Allentown, PA 18102
TheCharlesLawOffice@gmail.com
*Attorney for Plaintiff*

Kathy A. Le, Esquire
Deputy Attorney General
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
kle@attorneygeneral.gov
*Attorney for Defendant Special Agent Eric Barlow*

**THE MACMAIN LAW GROUP, LLC**

By:      */s/ David J. MacMain*
David J. MacMain
Janelle E. Fulton
Attorney I.D. Nos. 59320/80027
433 W. Market Street, Suite 200
West Chester, PA 19382
*Attorneys for Defendants City of Bethlehem,*
*Attorney for Defendants City of Bethlehem,*
*Mayor Robert Donchez, Chief of Police*
*Mark DiLuzio, Sergeant Michael Leaser,*
*and Officer Dawn Heuser*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT ANDREW SAULTZ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Docket No. 19-cv-05778-JMY |
| | : | |
| ATTORNEY GENERAL | : | |
| JOSH SHAPIRO, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT
OF THE BETHLEHEM DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**


**MacMain, Connell & Leinhauser, LLC**


Dated: <u>December 16, 2020</u>        By:    <u>*/s/ David J. MacMain*            </u>
                                                          David J. MacMain
                                                          Attorney I.D. No. 59320
                                                          Janelle E. Fulton
                                                          Attorney I.D. No. 80027
                                                          433 W. Market Street, Suite 200
                                                          West Chester, PA 19382
                                                          *Attorneys for Defendants the City of Bethlehem,*
                                                          *Mayor Robert Donchez, Chief Mark DiLuzio,*
                                                          *Sgt. Michael Leaser, and Det. Dawn Heuser*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................iii, iv, v, vi

I.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND......……………….……2

II.    STATEMENT OF UNDISPUTED MATERIAL FACTS.....……………………………3

III.   STANDARD OF REVIEW……………………….…………………………………...4

IV.    QUESTIONS PRESENTED………………….………………….……………….…..…5

      A.     Should the Bethlehem Defendants' Motion for Summary Judgment be Granted as to Plaintiff's Federal and State False Arrest, False Imprisonment, Malicious Prosecution, and Due Process Claims?.....……………………………………………5

      B.     Should the Bethlehem Defendants' Motion for Summary Judgment be Granted as to all Claims Because Sgt. Leaser and Det. Heuser had Reasonable Suspicion? ………………………………………………………......................................5

      C.     Should the Bethlehem Defendants' Motion for Summary Judgment be Granted as to Plaintiff's Conspiracy Claim?..............................................................................5

      D.     Should the Bethlehem Defendants' Motion for Summary Judgment be Granted as to Plaintiff's Federal Claim?………....…………………………………………….6

      E.     Should the Bethlehem Defendants' Motion for Summary Judgment be Granted as to Plaintiff's Supervisory and *Monell* Claims…………………………………...6

      F.     Should Plaintiff's Claim for Intentional Infliction of Emotional Distress be Dismissed?…....…………………………………………………………………...6

      G.     Should Plaintiff's Claim for Violation of the Pennsylvania Constitution  be Dismissed?…………………………….…………………………………….…...6

      H.     Should Plaintiff's Request for Punitive Damages be Dismissed?………….……...6

V.     Argument………………………………………………….…………………..….…6

      A.     Plaintiff's False Arrest, False Imprisonment, and Malicious Prosecution Claim Fails ………....…………………………………………………………..........6

      B.     Plaintiff's Conspiracy Claim Fails…………………………………….…....……24

      C.     Plaintiff's Due Process Claim Fails……………………….............................25

D.    Sergeant Leaser and Det. Heuser are Entitled to Qualified Immunity…………..26

E.    Plaintiff's Claim for Intentional Infliction of Emotional Distress Fails …………………………………………………………...………………....36

G.    Plaintiff's State Constitutional Violation Claim Must be Dismissed …………………………………………………………………………………37

H.    Sergeant Leaser and Det. Heuser are Entitled to Qualified Immunity on the State Law Claims…………………………………………………………………37

I.    Plaintiff's Request for Punitive Damages Must be Dismissed..………………40

VI.    Conclusion .................................................................................................41

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ............................................................... 32

*A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) .......... 33

*Adams v. Williams*, 407 U.S. 143, 146 (1972) .............................................................. 14

*Albright v. Oliver*, 510 U.S. 266 (1994), .................................................................. 23

*Anderson v. Creighton*, 483 U.S. 635, 640 (1982) .......................................................... 24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) ............... 4, 24

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ............................................................ 25

*Bd. of the Cty. v. Brown* 520 U.S 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 ................................ 30

*Blackhawk v. Pennsylvania*, 381 F.3d 202, 215 (3d. Cir. 2004)............................................. 26

*Bradshaw v. Twp. of Middletown*, 296 F. Supp. 2d 526, 549 (D.N.J. 2003), aff'd 145 Fed. Appx.
      763, 768 (3d Cir. 2005) ............................................................................ 32

*Butler v. Lamont*, 2017 U.S. Dist. LEXIS 129443 (E.D. Pa. 2017) .................................... 30-31

*Carter v. City of Phila.,* 181 F.3d 339, 357 (3d Cir. 1999)............................................ 27, 30

*Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) ..................... 33

*City of Canton v. Harris*, 489 U.S. 378, 398 (1989)................................................... 29, 30

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986)...................................................... 32

*Connick v. Thompson*, 131 S. Ct. 1350 (2011) ........................................................... 30

*Curly v. Klem,* 298 F.3d 271 (3d Cir. 2002) .............................................................. 25

*Delade v. Cargan*, 972 F.3d 207 (3rd Cir. 2020)......................................................... 23,

*Dennis v. DeJong*, 867 F.Supp.2d 588 (E.D.Pa. 2011)................................................................ 21

*Devenpeck v. Alford*, 543 U.S. 146, 153-55  (2004)................................................................... 19

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005)......................................... 20

*Dorsey v. Redman*, 615 Pa. 328, 96 A.3d 332 (2012)................................................................ 37

*Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988).......................................................... 7

*Fry v. Smoker et. al.*, 2012 U.S. Dist. LEXIS 64939, *8 (E.D. Pa., Schiller, J.)......................... 28

*Groh v. Ramirez*, 540 U.S. 551, 556 (2004) ............................................................................... 26

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ........................................................................ 24

*Hawthorne v. Municipality of Norristown*, No. 15-01572, 2016 U.S. Dist. LEXIS 57103 at *5-10
   (E.D. Pa. Apr. 29, 2016)............................................................................................................ 5

*Hawthorne v. Norristown*, 2016 U.S. Dist. LEXIS 14030 (E.D. Pa. 2016) ................................. 5

*Hunter v. Bryant*, 502 U.S. 224, 227 (1991)....................................................................... 24, 25

*Johnson v. City of Milwaukee*, 41 F. Supp. 2d 917, 931 (E.D. of Wis. 1999)............................. 31

*Kaucher v. County of Bucks*, 2005 U.S. Dist. LEXIS 1679, (E.D. Pa. Feb. 7, 2005)(Kelly, J.) .. 39

*Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987)............................. 34

*Kobrick v. Stevens*, No. 3:13-2865, 2017 U.S. Dist. LEXIS 141692, *7 (Sept. 30, 2014).......... 34

*Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999) .................................................... 38

*Los Angeles v. Heller*, 475 U.S. 796 (1986) ............................................................................... 28

*Manual v. City of Joliet*, 137 S. Ct. 911 (2017) ......................................................................... 23

*Martinez v. Marino,* 2007 U.S. Dist. LEXIS 44421 (E.D. Pa. 2007) ...................................34-35

*McDowell v. Sheerer*, 374 F. App'x 288, 291 (3d Cir. 2010) ...................................................... 5

iv

*Mitchell v. Forsythe*, 472 U.S. 511 (1985) .................................................................................. 24

*Monell v. New York Department of Social Services*, 463 U.S. 658 (1978) .................................. 28

*Morency v. City of Allentown*, Civ. No. 5:19-5304, 2020 U.S. Dist. LEXIS 182847, *1, * 29,
   n.28 (Oct. 2, 2020; Leeson, J.) .......................................................................................... 17

*Musila v. Lock Haven University*, M.D.Pa.2013, 970 F.Supp.2d 384 ........................................ 21

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ................................................................... 24, 25

*Renk v. City of Pittsburgh*, 641 A.2d 289 (Pa. 1994) ............................................................. 5, 36

*Rogers v. Mount Union Borough by Zook*, M. D. Pa.1993, 816 F.Supp. 308 ............................ 21

*Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997) ............................................................ 17-18

*Saucier v. Katz*, 533 U.S. 194 (2001) ........................................................................................ 25

*Schorr v. Borough of Lemoyne,* 2002 U.S. Dist. LEXIS 25668, at *25 (M.D. Pa. Dec. 27, 2002)
   ............................................................................................................................................ 37

*Scott v. Harris*, 550 U.S. 372, 378 (2007) ................................................................................... 4

*Smith v. Price*, 610 F. App'x 113, 115 (3d Cir. 2015) ................................................................. 5

*Smith v. Wade*, 461 U.S. 30, 56 (1983) ..................................................................................... 42

*Tapia v. City of Greenwood*, 965 F.2d 336 ................................................................................ 31

*Terry v. Ohio*, 392 U.S. 1 (1968) .................................................................................... 7, 14, 16

*United States v. Carter*, No. 19-78, 2019 U.S. Dist. LEXIS 206777, at *1, *11 (E.D. Pa. Nov. 26,
   2019) ............................................................................................................................. 8, 12-15

*United States v. Cortez*, 449 U.S. 411, 417 n. 2 (1981) .............................................................. 7

*United States v. Hensley*, 469 U.S. 221, 229 (1985) .......................................................... 7,8, 22

*United States v. Johnson*, 592 F.3d 442, 448 (3d Cir. 2010). ................................................... 14

*United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)................................................................. 27

*United States v. Magallon-Lopez*, 817 F.3d 671 (9th Cir. 2016)................................................. 19

*United States v. Place*, 462 U.S. 696 (1983) ............................................................................... 7

*United States v. Robertson*, 305 F.3d 164, 168 (3d Cir. 2002)............................................... 17, 27

*United States v. Whitfield*, 634 F.3d 741, 745 (3d Cir. 2010)................................................. 17, 27

*White v. Andrusiak*, 655 F. App'x 87, 90 (3d Cir. 2016)............................................................. 6

*White v. Pauly,* 137 S. Ct. 538, 553 (2017)………………………………………………...26

*Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989) ................................... 28

*Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989)................................................................. 33

*Williams v. Musser*, 1997 WL 403509, at *10 (N.D. of Ill.) ...................................................... 31

*Wilson v. Layne,* 526 U.S. 603, 119 S. Ct. 1692 (1999) ............................................................. 30

**Statutes**

42 Pa. C.S.A. § 8546(2) ............................................................................................................. 36

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................................................... 9

Unlike many §1983 claims, there really are no genuine issues of material fact in dispute. Rather the question is simply whether, based upon information provided by a Special Agent from the Pennsylvania Attorney General's Office – specifically, that he wanted the Bethlehem Police to help him catch a male (Plaintiff) who was trying to meet a 14 year-old girl for sex – provided Bethlehem Police Sgt. Michael Leaser and Det. Dawn Heuser with reasonable suspicion to stop the vehicle and detain Plaintiff by removing him from the vehicle and handcuffing him for less than nine minutes until the Special Agent arrived on scene, completed his investigation, and placed Plaintiff under arrest.

Defendants the City of Bethlehem, Mayor Robert Donchez, Police Chief Mark A. Diluzio, Sgt. Michael Leaser, and Det. Dawn Heuser (collectively "the Bethlehem Defendants") are seeking dismissal of Plaintiff's federal false arrest, false imprisonment, malicious prosecution, and conspiracy claims against Sgt. Leaser and Det. Heuser (Counts I, II, III, and IV), his due process claim (Count V), as well as the supplemental state law claims of false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, and violation of the Pennsylvania Constitution against Sgt. Leaser and Det. Heuser (Counts VIII, IX, X, and XI). The Bethlehem Defendants also seek dismissal of Plaintiff's supervisory claim against Mayor Donchez and former Chief DiLuzio (Count VI) and the *Monell* claim (Count VII) against the City of Bethlehem. Finally, the Bethlehem Defendants seek dismissal of Plaintiff's claim for punitive damages.

The claims against the individual officers fail because neither Sgt. Leaser, nor Det. Heuser arrested, charged, or prosecuted Plaintiff. Rather, Sgt. Leaser and Det. Heuser merely stopped and detained Plaintiff for a brief time – less than nine minutes – until Co-Defendant

1

Special Agent Barlow arrived on scene to complete his investigation and, ultimately, arrest Plaintiff.

Even Plaintiff's criminal defense attorney agreed that Sgt. Leaser and Det. Heuser had 'reasonable suspicion' to stop Plaintiff based upon the request of Agent Barlow and the information Agent Barlow provided: that he was looking for a male who was driving a large, white SUV, probably a Chrysler Aspen, that had New Jersey tags or was coming from New Jersey, because the male was coming to the Bethlehem Hyatt Hotel to meet and have sex with a 14-year-old girl. During the stop, and to safely detain Plaintiff and secure the scene, Sgt. Leaser and Det. Heuser were permitted to remove Plaintiff from the running vehicle, handcuff him, and place him in a police cruiser, all without converting the brief detention into an arrest.

Even if Plaintiff can establish an actual violation of a right protected under section 1983, there is no evidence of any actions taken in concert by the individual Defendants with the specific intent to violate the right protected under § 1983, and therefore Plaintiff's conspiracy claim fails.

Moreover, should this Court find the constitutional questions too close to call, Sgt. Leaser and Det. Heuser are entitled to qualified immunity, as their conduct did not violate clearly established rights of Plaintiff. Finally, Plaintiff has not taken any discovery or produced any evidence whatsoever to support either a supervisory claim against Mayor Donchez and former Chief DiLuzio or a *Monell* claim against the City of Bethlehem.

Lastly, there is no private right to recovery under the Pennsylvania Constitution.

## I.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff filed his Complaint on December 9, 2019, asserting false arrest, false imprisonment, malicious prosecution, conspiracy, and due process claims against Bethlehem

Police Sgt. Michael Leaser and Det. Dawn Heuser, supervisory claims against Bethlehem Mayor

Robert Donchez and former Chief of Police Mark DiLuzio, a *Monell* claim against the City of

Bethlehem, and supplemental state law claims of false arrest, false imprisonment, malicious

prosecution, intentional infliction of emotional distress, and violation of the Pennsylvania

Constitution against Sgt. Leaser and Det. Heuser.  Compl. (Doc. 1).  Fact discovery closed on

October 14, 2020, and this matter is ripe for summary judgment.  *See* Amended Scheduling

Order dated August 7, 2020 (Doc. 23).

## II.    <u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

A concise statement of the undisputed facts is attached hereto as required by Local Rule

56.1 governing motions for summary judgment and the Court's Procedures.

In summary, and as more fully set forth in the Statement of Facts, Sgt. Leaser and Det.

Heuser merely assisted Co-Defendant Special Agent Eric Barlow in his efforts to catch a male

child predator in an operation he was conducting within the City of Bethlehem by briefly

detaining a suspect.  Agent Barlow advised the Bethlehem Police Department that he was alone

and needed assistance apprehending the male suspect, and Sgt. Leaser and Det. Heuser were

dispatched to provide that assistance.  Specifically, Agent Barlow advised Sgt. Leaser that he had

been posing as a 14 year-old girl and had been emailing with a male – later determined to be

Plaintiff – who was driving a large, white SUV, possibly a Chrysler Aspen, with New Jersey

plates or coming from New Jersey, and had arranged to meet Plaintiff at the Bethlehem Hyatt

Hotel for a sexual rendezvous.  Sergeant Leaser and Det. Heuser located the described vehicle

within two blocks of the Hyatt, confirmed that Agent Barlow wanted them to stop the vehicle and

detain Plaintiff, and proceeded to stop the vehicle, ask Plaintiff to step out of the vehicle, place

him in handcuffs for officer safety, and then place him in a police car to keep him warm.  When

Agent Barlow arrived on scene less than nine minutes later, Sgt. Leaser and Det. Heuser turned Plaintiff, his property, and his vehicle over to Agent Barlow who completed his investigation, determined that Plaintiff was the person he had been emailing with, and placed Plaintiff under arrest.  Accordingly, Plaintiff's claims fail as a matter of law, and the Bethlehem Defendants are entitled to summary judgment.

## III.   <u>STANDARD OF REVIEW</u>

Summary judgment should be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material when it affects the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A genuine issue of material fact exists when the evidence requires a fact finder to resolve the parties' differing versions of the truth at trial.  *Id.* at 249, 106 S. Ct. at 2510.  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48, 106 S. Ct. at 2509-10 (emphasis in original).

In this case, there are no material issues in dispute, and the entirety of Sgt. Leaser's and Det. Heuser's encounter with Plaintiff was captured on video and provides a clear timeline of events and shows that neither Sgt. Leaser nor Det. Heuser arrested Plaintiff.  In *Scott v. Harris*, the United States Supreme Court noted that the existence in the record of a videotape capturing the events underlying claim presents an "added wrinkle" to the usual standard which requires courts "to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" 550 U.S. 372, 378 (2007) (citations omitted).

Further, the Court instructed that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Id.* at 380. Under such circumstances, a court should view "the facts in the light depicted by the videotape." *Id*. at 380-81. The Third Circuit and this Court have followed this same approach to make clear that a court need not credit or consider Plaintiff's self-serving version of facts when a video exists that refutes it. *See Smith v. Price*, 610 F. App'x 113, 115 (3d Cir. 2015); *see also McDowell v. Sheerer*, 374 F. App'x 288, 291 (3d Cir. 2010).

For example, in *Hawthorne v. Norristown*, 2016 U.S. Dist. LEXIS 14030 (E.D. Pa. 2016), the Honorable Gerald Pappert noted in a police pursuit case that the plaintiff's version of events was refuted by the police video, was "pure fiction," and the "only question it raises is why the Plaintiffs and their lawyer continued to pursue the case." *Id.* at *1-2. Judge Pappert granted summary judgment and later sanctioned Plaintiff's counsel for asserting facts and a claim that were clearly refuted by video evidence. *See also Hawthorne v. Municipality of Norristown*, No. 15-01572, 2016 U.S. Dist. LEXIS 57103 at *5-10 (E.D. Pa. Apr. 29, 2016) (Pappert, J.).

## IV.   STATEMENT OF QUESTIONS INVOLVED

1. **Should the Bethlehem Defendants' Motion for Summary Judgment be granted as to Plaintiff's federal and state false arrest, false imprisonment, malicious prosecution, and due process claims (Counts I, II, III, IV, VIII, and IX) because Sgt. Leaser and Det. Heuser did not arrest or initiate criminal proceedings against Plaintiff?**

   Suggested Answer:    Yes.

2. **Should the Bethlehem Defendants' Motion for Summary Judgment be granted as to all claims because Sgt. Leaser and Det. Heuser had reasonable suspicion to stop Plaintiff?**

   Suggested Answer:    Yes.

3. **Should the Bethlehem Defendants' Motion for Summary Judgment be granted as to Plaintiff's conspiracy claim (Count V) because Plaintiff does not have a valid**

**underlying cause of action and has not established that Sgt. Leaser, Det. Heuser, and Agent Barlow acted in concert to violate Plaintiff's rights?**

Suggested Answer:    Yes.

4. **Should the Bethlehem Defendants' Motion for Summary Judgment be granted as to Plaintiff's federal claims because Sgt. Leaser's and Det. Heuser's conduct did not violate clearly established statutory or constitutional rights of Plaintiff of which a reasonable officer would have known, and thus they are entitled to qualified immunity?**

Suggested Answer:    Yes.

5. **Should the Bethlehem Defendants' Motion for Summary Judgment be granted as to Plaintiff's supervisory and *Monell* claims (Counts VI and VII) because Plaintiff has conducted no discovery and produced no evidence whatsoever to support such a claim?**

Suggested Answer:    Yes.

6. **Should Plaintiff's claim for intentional infliction of emotional distress (Count X) be dismissed because the Bethlehem Defendants engaged in no wrongdoing and Plaintiff failed to produce any evidence of emotional distress?**

Suggested Answer:    Yes.

7. **Should Plaintiff's claim for violation of the Pennsylvania Constitution be dismissed because there is no private cause of action under the Pennsylvania Constitution (Count XI)?**

Suggested Answer:    Yes.

8. **Should Plaintiff's request for punitive damages be dismissed because no reasonable jury could find that either Sgt Leaser's or Det. Heuser's conduct met the standard of willful and malicious conduct that is required for punitive damages?**

Suggested Answer:    Yes.

V.   **ARGUMENT**

A.   **Plaintiff's Federal and State Law Claims for False Arrest, False Imprisonment, and Malicious Prosecution (Counts I, II, III, IV, VIII, and IX) Fail as a Matter of Law.**

1.   Plaintiff's False Arrest and False Imprisonment Claims Fail Because Sgt. Leaser and Det. Heuser Did Not Arrest Plaintiff.

"To make out either a false arrest or false imprisonment claim, [a plaintiff] need[s] to

demonstrate that his arrest was unsupported by probable cause." *White v. Andrusiak*, 655 F.
App'x 87, 90 (3d Cir. 2016) (citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir.
1995)); *see Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988) (explaining that, in order
to prevail on a claim for unlawful arrest pursuant to § 1983, a plaintiff must prove that the police
arrested him without probable cause).  The same standard applies to false arrest and false
imprisonment claims brought under Pennsylvania law.  *See Renk v. City of Pittsburgh*, 641 A.2d
289, 295 (Pa. 1994) ("A false arrest is defined as 1) an arrest made without probable cause or 2)
an arrest made by a person without privilege to do so.").  Here, Plaintiff's false arrest and false
imprisonment claims fail because neither Sgt. Leaser nor Det. Heuser arrested Plaintiff; rather,
they merely detained Plaintiff for less than nine minutes, until Agent Barlow arrived on scene to
complete his investigation and arrest Plaintiff.

      The Fourth Amendment prohibits unreasonable seizures, but under *Terry v. Ohio*, 392
U.S. 1 (1968), police officers may conduct a brief stop of a person suspected of being involved in
criminal activity.  Courts have extended investigative stops to include those based on reasonable
suspicion that past criminal activity has occurred.  *See United States v. Cortez*, 449 U.S. 411, 417
n. 2 (1981) (an officer may stop and question a person if there is reasonable grounds to believe
they are wanted for past criminal conduct); *United States v. Place*, 462 U.S. 696 (1983) (police
have the authority to stop a person when "the officer has reasonable and articulable suspicion
that the person has been or is about to be engaged in criminal activity.").

      Police may seize and detain a suspect for a brief *Terry* stop when they have reasonable
suspicion that the suspect "was involved in or is wanted in connection with a completed
felony." *United States v. Hensley*, 469 U.S. 221, 229 (1985).  "[I]f police have a reasonable
suspicion, grounded in specific and articulable facts, that a person they encounter was involved

in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." *Id.*

To determine if such a stop is violative of the Fourth Amendment, the same test is to be applied as is used to determine if investigations into ongoing or criminal activity is reasonable. *Id.* A court must balance the "nature and equality of the intrusion on personal security against the importance of the governmental interest alleged to justify the intrusion." *Id.* Further, the *Hensley* Court held that in the context of crimes involving a threat to public safety, the law enforcement interest in solving the crime and detaining the suspect as soon as possible "outweigh the individuals interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes." *Id.* at 330.

This Court has noted that:

> While there can be "difficult line-drawing problems in distinguishing an investigative stop from a de facto arrest," the touchstone is whether the suspect is detained longer than necessary for the police to conduct their investigation. In other words, a *Terry* stop must be "reasonably related in scope to the circumstances which justified the interference in the first place."

*United States v. Carter*, No. 19-78, 2019 U.S. Dist. LEXIS 206777, at *1, *11 (E.D. Pa. Nov. 26, 2019) (quoting *United States v. Sharpe*, 470 U.S. 675, 682, 685 (1985) and *Terry*, 392 U.S. at 20).

In the present case, on December 10, 2017, at approximately 12:16 a.m., Bethlehem Police Sgt. Michael Leaser and Det. Dawn Heuser were notified that Co-Defendant Special Agent Eric Barlow of the Pennsylvania Attorney General's Office was requesting assistance with a child predator operation he was conducting at the Hyatt in Bethlehem. *See* Compl. (Doc. 1); Heuser Report (Ex. A)[1] at p. 4.

---

[1] All references to exhibits are to those attached to the Bethlehem Defendants' Statement of Undisputed Facts.

Agent Barlow was put in direct contact with Sgt. Leaser by mobile phone and advised that the male suspect who had come to the Hyatt to meet a 14 year-old was operating "a white SUV, possibly an Aspen" with New Jersey license plates and/or coming from New Jersey and that the suspect was in or around the parking garage next to the Hyatt.  Heuser Report (Ex. A) at p. 4; D.T. Leaser (Ex. E), at pp. 10:19-24; 11:1-24; 12:1-13; 13:7-20; 57:13-20; D.T. of D. Heuser (Ex. F), at pp. 13:3-10; 21:1-23.  Upon hearing the vehicle description, Det. Heuser recalled driving by a large white SUV with New Jersey license plates parked and running next to the parking garage, within a block of the hotel.  Heuser Report (Ex. A) at p. 4; D.T. Leaser (Ex. E), at pp. 16:19-23; 17:17-22; D.T. of D. Heuser (Ex. F), at pp. 11:23-24; 12:1-13; 16:13-24; 17:1-12; Heuser Car Cam (Ex. G), at 11:40-12:56.  Sergeant Leaser remained in contact with Agent Barlow, who advised him that he believed the suspect "may have gotten 'spooked' [by the police cars] but still may be driving around the area."  Heuser Report (Ex. A) at p. 4; D.T. Leaser (Ex. E), at p. 22:2-12.

Sergeant Leaser and Det. Heuser then returned to the area of the parking garage, where Det. Heuser saw the same white Chrysler Aspen with New Jersey license plates.  Heuser Report (Ex. A) at p. 4; D.T. of D. Heuser (Ex. F), at pp. 18:12-24; 19:1; Heuser Front Cam (Ex. H).  Detective Heuser saw the Aspen at a traffic light on Guetter Street, turning right onto Broad Street, ***just one block from the Hyatt***.  Heuser Report (Ex. A) at p. 4; Map of Bethlehem (Ex.) I.  Detective Heuser informed Sgt. Leaser, who was behind her, and he told her it was the vehicle they were seeking, so she initiated a traffic stop two city blocks away, at Broad and Center Streets.  Heuser Report (Ex. A) at p. 4; D.T. Leaser (Ex. E), at pp. 19:3-24; 20:1-12; D.T. of D. Heuser (Ex. F), at pp. 22:3-7; Heuser Front Cam (Ex. H); Map of Bethlehem (Ex. I); Leaser

Front Cam (Ex. J).  Agent Barlow confirmed that he wanted the male driver detained.  Heuser
Report (Ex. A) at p. 4.

Detective Heuser approached Plaintiff's vehicle on the driver's side, while Sgt. Leaser
approached on the passenger side.  D.T. Leaser (Ex. E), at p. 21:14; Heuser Front Cam (Ex. H);
Leaser Front Cam (Ex. J).  The driver of the Aspen was identified as Plaintiff Robert Saultz.
Compl. (Doc. 1) at ¶ 39; D.T. Leaser (Ex. E), at p. 21:8-10.  When Det. Heuser and Sgt. Leaser
approached the vehicle, they noticed that Plaintiff appeared "extremely nervous": he was leaning
forward, almost hugging the steering wheel, his eyes were wide, like a "deer in headlights," and
he was sweating.  D.T. Leaser (Ex. E), at pp. 21:18-19; 27:15-20; 34:4-6; D.T. of D. Heuser (Ex.
F), at pp. 23:3-21; 24:6; *see* Leaser Front Cam (Ex. J) at 11:23-26, in which Sgt. Leaser can be
heard telling Agent Barlow that "when we stopped him he was nervous as hell.").

Due to the nature of the crime of which Plaintiff was suspected and the fact that Plaintiff
appeared extremely nervous and his car was running, Sgt. Leaser was concerned that Plaintiff was
a flight risk.  D.T. Leaser (Ex. E), at pp. 32:23-34:16.  In an attempt to calm Plaintiff down, Sgt.
Leaser told Plaintiff that the officers received a report that a vehicle matching that description had
been involved in a car accident.  D.T. Leaser (Ex. E), at p. 28:1-24; Heuser Front Cam (Ex. G).
Sergeant Leaser noted that, upon hearing about the accident, Plaintiff's demeanor changed, "like
air letting out of a balloon," and that Plaintiff looked relieved and sat back in his seat.  D.T.
Leaser (Ex. E), at p. 29:1-7; *see* Leaser Front Cam (Ex. J) at 11:23-26, in which Sgt. Leaser can
be heard telling Agent Barlow how Plaintiff relaxed after Sgt. Leaser mentioned the car accident.

Plaintiff told Sgt. Leaser that he had come to Bethlehem to meet a friend but changed his
mind because he needed to get home to his dog.  D.T. Leaser (Ex. E), at pp. 59:8-24-60:3;
Heuser Front Cam (Ex. H) at 2:28-2:36.  Because a suspect sitting in a running vehicle is still a

flight risk, and because Agent Barlow wanted the officers to detain Plaintiff, Sgt. Leaser wanted

to remove Plaintiff from the vehicle, so he told Plaintiff that he smelled alcohol and asked

Plaintiff to step out of the vehicle, Plaintiff complied, and Sgt. Leaser placed him in handcuffs to

secure him until Agent Barlow arrived on scene.  D.T. Leaser (Ex. E), at pp. 35:2-16; Heuser

Front Cam (Ex. H) at 2:36-2:53.

The sole purpose of stopping Plaintiff, removing him from the vehicle, and handcuffing

him was to detain him until Agent Barlow arrived on scene.  D.T. Leaser (Ex. E), at p. 37:15-24;

Leaser Front Cam (Ex. J) at 3:30-4:04.  Once Plaintiff was detained, Sgt. Leaser called Agent

Barlow and told him he had Plaintiff detained, that there was a cell phone on the front passenger

seat of the vehicle, and that the officers had not touched anything in the car.  D.T. Leaser (Ex. E),

at p. 45:15-20; Leaser Front Cam (Ex. J) at 4:35-4:56.  The only role performed by Sgt. Leaser

and Det. Heuser was to assist Agent Barlow by stopping, detaining, and transporting Plaintiff.

*See* Heuser Car Cam (Ex. G) at 9:49; D.T. Leaser (Ex. E), at pp. 51:19-52:1.

Plaintiff asked Sgt. Leaser what he was being held for, and Sgt. Leaser responded that he

was just being detained, that someone would be there to talk to him, and that everything would

be explained to him, to which Plaintiff responded, "ok."  Heuser Front Cam (Ex. H) at 2:50-2:57;

Leaser Front Cam (Ex. J) at 5:10-22; 6:10-20.

It was cold and snowy in Bethlehem on December 10, 2017, and Plaintiff was not

wearing a coat.  *Id.*  After Plaintiff had been standing on the snow-covered sidewalk for a few

minutes, Det. Heuser suggested that they place him in a police cruiser for warmth.  Heuser Car

Cam (Ex. G) at 8:00; Heuser Front Cam (Ex. H) at 5:25-5:40.

Less than five (5) minutes later, and less than eight (8) minutes after Sgt. Leaser placed

Plaintiff in handcuffs, Agent Barlow arrived and took control of the scene, including seizing all

evidence and Plaintiff's vehicle.  Heuser Front Cam (Ex. H) at 10:14; Leaser Front Cam (Ex. J) at 9:45-11:02.  Agent Barlow told Sgt. Leaser, "when I called you, he was slow-rolling" by the hotel.  Id.at 11:03-12.  Agent Barlow also took custody of Plaintiff's mobile phone from Plaintiff's vehicle, and he can be heard telling Sgt. Leaser, "there it is – stop playing I'm cold," referring to the last message Agent Barlow sent to Plaintiff.  D.T. Leaser (Ex. E), at p. 50:15-24; Leaser Front Cam (Ex. J) at 11:14-20.  This confirmed that Plaintiff was the suspect Agent Barlow was seeking.

Agent Barlow spoke with Plaintiff, introduced himself, and gave Plaintiff his *Miranda* warning.  Heuser Car Cam (Ex. G) at 13:09-14:40.  Because Agent Barlow was driving a vehicle that was not equipped to transport suspects, he asked Det. Heuser to transport Plaintiff to the police station, where Agent Barlow conducted his interview with Plaintiff.  Heuser Report (Ex. A) at p. 4; Leaser Front Cam (Ex. J) at 10:25-33.

Agent Barlow filed criminal charges against Plaintiff, charging him with two felonies of the first degree and one felony of the third degree.  Police Criminal Complaint and Affidavit of Probable Cause (Barlow 000062-000066) (Ex. K).  No Bethlehem Police Officer filed criminal charges against Plaintiff or in any way participated in the criminal prosecution.  *See id.*

This Court's recent decision in *United States v. Carter* is directly on point and instructive here.  In that case, two men robbed a store, and a police bulletin was issued describing one of the suspects as a black man in his twenties who was approximately five feet nine inches tall and wearing "'black pants with stripes on the sides, [a] dark navy blue hoody, black sneakers, gloves, [a] mask, [and a] blue school book bag.'"  *Carter*, No. 19-78, 2019 U.S. Dist. LEXIS 206777, at *1.  There was a photograph from surveillance video attached to the police bulletin.  *Id.* at *2.  Five days later, another store on the same block was robbed, and the suspect that described as "a

black man who weighed approximately 150 pounds wearing '"[a] blue Adidas jacket, blue pants, [and a] dark bandana."'" *Id.*  Three days after the second robbery, the police officer who responded to the second robbery saw Carter less than a mile – or a fifteen-minute walk – from the stores that were robbed.  *Id.* at *4.  The officer and his partner followed Carter into a convenience store and "handcuffed Carter almost immediately."  *Id.* at *6.  Carter asked the officers why they were "singling him out," and they told him they would explain later.  *Id.* Carter gave the officers a false name and claimed he did not have identification, so the officers, who were on foot, called for backup.

The police car that responded had a terminal that would allow the officers to try to identify Carter.  *Id.* at *7.  The officers placed Carter in the police car approximately six minutes after they started talking to him.  *Id.*  Because Carter had provided a false name, the officers were not able to identify him using the terminal in the police car, so they had the backup officers transport him to the police station.  While being transported, Carter admitted that he had provided a false name.  *Id.*  At the station, the officers were able to positively identify Carter, and they learned that he had an outstanding arrest warrant.  *Id.* at *7-*8.  The officers then continued to investigate the robberies and later charged him with the robberies.  *Id.* at *8-*9.  Carter argued that the evidence against him should be suppressed, in part, because the officers violated the Fourth Amendment when they seized him at the convenience store.  *Id.* at *9.

Carter argued that the stop was a de facto arrest because he was handcuffed, put in a police car, and transported to the police station. ***Chief Judge Sanchez ruled that none of these elements transformed the Terry stop into a de facto arrest***.  *Carter*, No. 19-78, 2019 U.S. Dist. LEXIS 206777, at *11.

13

### a. *Handcuffing a Suspect Does Not Equate an Arrest.*

Plaintiff claims that removing Plaintiff from the running vehicle and placing him in handcuffs transformed the *Terry* stop into an arrest.  However, that is contrary to the law in this Circuit.  The Third Circuit has held that handcuffing a suspect does not turn a *Terry* stop into an arrest; rather handcuffing a suspect during a *Terry* stop is appropriate when the police do so "to ensure that the scene [i]s secure."  *United States v. Johnson*, 592 F.3d 442, 448 (3d Cir. 2010).

Similar to the facts in *Carter*, in the present case, Sgt. Leaser and Det. Heuser both noted that Plaintiff appeared to be very nervous, and they were concerned that he was a flight risk.  It was, therefore, appropriate for Sgt. Leaser to ask Plaintiff to step out of the car.  It was also reasonable and constitutionally permissible, under both *Johnson* and *Carter*, for Sgt. Leaser to handcuff Plaintiff to ensure that the scene was secure.  As such, Sgt. Leaser's handcuffing of Plaintiff did not convert the stop into a de facto arrest.

### b. *Placing a Suspect in a Police Car Does Not Equate an Arrest.*

In holding that placing Carter in the police car did not transform the stop into an arrest, Chief Judge Sanchez noted that, "[d]uring a *Terry* stop, it is permissible for the police to take reasonable steps to determine a suspect's identity and to secure the situation." *Carter*, No. 19-78, 2019 U.S. Dist. LEXIS 206777, at *13-*14.  The Supreme Court has explained that "[a] brief stop of a suspicious individual, in order to determine his identity or ***to maintain the status quo momentarily while obtaining more information***, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146 (1972) (emphasis added); *see Terry*, 392 U.S. at 24 ("[W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they

may lack probable cause for an arrest. . . . [It is] clearly unreasonable to deny the officer[s] the power to take necessary measures . . . to neutralize the threat of physical harm.").

Here, it was a cold, snowy December night, and Plaintiff was not wearing a coat. Rather than continue to have Plaintiff stand on the sidewalk while they waited for Agent Barlow to arrive, Sgt. Leaser and Det. Heuser decided to place Plaintiff in Det. Heuser's running police cruiser. This served to not only make Plaintiff more comfortable, but to better secure the scene. As *Carter* demonstrates, it was constitutionally permissible for Sgt. Leaser and Det. Heuser to take the reasonable step of placing Plaintiff in the police cruiser while they waited for Agent Barlow to arrive and doing so did not convert the stop into a de facto arrest.

### c. *Transporting a Suspect to the Police Station Does Not Equate an Arrest.*

Holding that the officers' decision to take *Carter* to the police station also did not elevate the stop into an arrest, Chief Judge Sanchez noted that the Third Circuit has held that "[t]ransporting a defendant a short distance for identification purposes is not outside the scope of a *Terry* stop." *Carter*, No. 19-78, 2019 U.S. Dist. LEXIS 206777, at *15 (citing *United States v. Foster*, 891 F.3d 93, 107 (3d Cir. 2018) (explaining that it was not unreasonable as part of a *Terry* stop "to transport [the defendant] the very short distance back to Branmar Plaza [so a police officer could identify him].").

In this case, it is the Bethlehem Defendant's position that Agent Barlow had completed his investigation and formally placed Plaintiff under arrest at the scene before Det. Heuser transported Plaintiff to the Bethlehem police station at Agent Barlow's request. However, *Carter* makes clear that even going so far as to transport a suspect in a police vehicle does not convert the stop into an arrest.

### d.   Detaining a Suspect for Ten Minutes Does Not Equate an Arrest.

Finally, the Supreme Court has held that a stop is permissible under *Terry* when "the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470 U.S. at 686.

Chief Judge Sanchez noted that the amount of time Carter spent detained – **less than twenty minutes** – did not turn his stop into an arrest, explaining that "[t]here is no bright-line rule regarding the length of time a defendant can be held during a *Terry* stop." *Carter*, No. 19-78, 2019 U.S. Dist. LEXIS 206777, at *16 (citing *Sharpe*, 470 U.S. at 685 ("[O]ur cases impose no rigid time limitation on *Terry* stops . . . Much as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria.").  Chief Judge Sanchez reasoned that the officers held Carter for about thirteen minutes before sending him to the police station and spent about six of the thirteen minutes waiting for backup. The Court determined that this was a reasonable method for the officers to pursue their investigation, including verifying Carter's identity.  *Carter*, No. 19-78, 2019 U.S. Dist. LEXIS 206777, at *16-17.

Similarly, in this case, Sgt. Leaser and Det. Heuser detained Plaintiff for less than nine (9) minutes while they waited for Agent Barlow to arrive on scene.  Once Agent Barlow arrived, Sgt. Leaser and Det. Heuser turned the scene, including Plaintiff, his property, and his vehicle, over to Agent Barlow, who conducted his investigation, which confirmed that Plaintiff was the male suspect that Agent Barlow was seeking.  At that point, Agent Barlow read Plaintiff his *Miranda* rights and placed him formally under arrest.

16

Based upon the clear case law in this Circuit, Sgt. Leaser's and Det. Heuser's stop of Plaintiff was a *Terry* stop and not a de facto arrest.  Because Sgt. Leaser and Det. Heuser did not arrest Plaintiff, they cannot be liable for a false arrest or false imprisonment claim.  Therefore, Plaintiff's false arrest and false imprisonment claims against Sgt. Leaser and Det Heuser fail as a matter of law.

### e.  *Law Enforcement Officers Are Permitted to Rely upon Information Provided by Other Law Enforcement Agents.*

It is unclear whether Plaintiff will argue that Sgt. Leaser and Det. Heuser lacked reasonable suspicion to stop Plaintiff because they acted on information provided by another law enforcement officer.  If, and to the extent, Plaintiff does make such a challenge, the Bethlehem Defendants note that the "collective knowledge doctrine" allows imputation of one law enforcement officer's knowledge to another officer who actually makes a stop, even if the latter does not possess all relevant facts. *See United States v. Whitfield*, 634 F.3d 741, 745 (3d Cir. 2010); *see also United States v. Robertson*, 305 F.3d 164, 168 (3d Cir. 2002) ("[R]easonable suspicion can be based on information gathered from another person.").  Under the doctrine, determinations concerning the existence of reasonable suspicion can be made based on the knowledge of the officer conveying the information, not on "whether those relying on the [information] were themselves aware of the specific facts which led their colleagues to seek their assistance."  *United States v. Hensley*, 469 U.S. 221, 231 (1985).

In a recent opinion, Judge Leeson of this Court noted that the plaintiff's argument that he was detained by an officer with no knowledge of any wrongdoing "misses the mark," because the fact that the officer detaining the suspect did not have first-hand knowledge does not defeat a finding of reasonable suspicion or probable cause.  *Morency v. City of Allentown*, Civ. No. 5:19-5304, 2020 U.S. Dist. LEXIS 182847, *1, * 29, n.28 (Oct. 2, 2020; Leeson, J.); *see Rogers v.*

*Powell*, 120 F.3d 446, 453 (3d Cir. 1997) ("The legality of a seizure based solely on statements issued by fellow officers depends on whether the officers who issued the statements possessed the requisite basis to seize the suspect. . . . [A]n officer can lawfully act solely on the basis of statements issued by fellow officers if the officers issuing the statements possessed the facts and circumstances necessary to support a finding of the requisite basis.").

Thus, it is clear, based upon both the Supreme Court's decision in *Hensley* and the "common knowledge doctrine," the information that Agent Barlow relayed to Sgt. Leaser and Det Heuser provided those officers with reasonable suspicion to stop and detain Plaintiff for the short time until Agent Barlow arrived on scene to complete his investigation. Indeed, even Plaintiff's criminal defense attorney in the underlying criminal matter admitted that "there was reasonable suspicion probably to stop the vehicle." D.T. of E. Dowdle (Ex. L), at p. 61:8-10.

### *f.  It Was Not Unlawful for Sgt. Leaser to Lie to Plaintiff.*

Plaintiff suggests that it was unlawful for Sgt. Leaser to lie to him about the reason for the stop. *See* Compl. (Doc. 1) at ¶ 41. Plaintiff also claims that he was placed under arrest for driving under the influence of alcohol (Compl. (Doc. 1) at ¶¶ 48-49, 51); however, it is undisputed that Sgt. Leaser did not suspect that Plaintiff was actually driving under the influence, nor did Sgt. Leaser place Plaintiff under arrest for driving under the influence, and Plaintiff was never charged with driving under the influence. *See* Police Criminal Complaint and Affidavit of Probable Cause (Ex. K). Rather, it was a "ruse" to keep Plaintiff calm and cooperative, so he did not try to flee the scene. *See* Compl. (Doc. 1) at ¶ 54.

The Supreme Court has recognized that, if the facts support probable cause to arrest for one offense, the arrest is lawful even if the officer invoked, as the basis for the arrest, a different offense

as to which probable cause was lacking.  *Devenpeck v. Alford*, 543 U.S. 146, 153-55  (2004). The

Court in *Devenpeck* emphasized that the objective facts are what matter in situations like these:

> While it is assuredly good police practice to inform a person
> of the reason for his arrest at the time he is taken into custody,
> we have never held that to be constitutionally required.

543 U.S. at 155 (footnote omitted).

There is a case from the Ninth Circuit that is directly on point.  In *United States v.

Magallon-Lopez*, 817 F.3d 671 (9th Cir. 2016), officers were seeking two men who they believed

would be traveling in a green, black, or white passenger car with Washington plates through

Bozeman, Montana, on a certain date.  *Id.* at 673-74.  After obtaining this information, the

officers decided to conduct an investigatory stop, and the officer following a car matching this

description pulled it over as if making a routine traffic stop. Although the officer had not

observed any traffic violations, he told the suspect that the reason for the stop was the driver's

failure to signal properly before changing lanes. The officer knew this was not the real reason for

the stop, but he did not want to disclose at that point the true nature of the investigation.  *Id.*

Magallon-Lopez argued that the stop violated the Fourth Amendment, because the officer

deliberately lied about the reason for the stop, and the reason the officer gave was not supported

by reasonable suspicion.  The Court of Appeals for the Ninth Circuit disagreed and noted that

"[t]he standard for determining whether probable cause or reasonable suspicion exists is an

objective one; it does not turn either on the subjective thought processes of the officer *or on

whether the officer is truthful about the reason for the stop*."  *Id.* at 675 (emphasis added).  The

Ninth Circuit went on to hold that, "[so] long as the facts known to the officer establish

reasonable suspicion to justify an investigatory stop, the stop is lawful even if the officer falsely

cites as the basis for the stop a ground that is not supported by reasonable suspicion."  *Id.*

Accordingly, the fact that Sgt. Leaser permissibly lied to Plaintiff regarding the reason for the traffic stop does not invalidate the reasonable suspicion the officers had to stop and detain Plaintiff, nor does it give rise to a claim against Sgt Leaser under the Fourth Amendment.

      2.      Plaintiff's Malicious Prosecution Claim Fails Because Neither Sgt. Leaser Nor Det. Heuser Initiated a Criminal Proceeding.

In order for a plaintiff to prevail on a § 1983 claim for malicious prosecution, he must demonstrate that:

(1) the defendants initiated a criminal proceeding;

(2) the criminal proceeding ended in the plaintiff's favor;

(3) the proceeding was initiated without probable cause;

(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and

(5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). Pennsylvania state law requires a similar showing. *See, e.g., Strickland v. Univ. of Scranton*, 700 A.2d 979, 984 (Pa. Super. Ct. 1997) ("A showing of probable cause *to institute proceedings against a plaintiff* establishes an absolute defense against an action for malicious prosecution, which renders immaterial the issue of whether the prosecutor's motive is malicious or otherwise.") (emphasis added).

Here, Plaintiff cannot meet the first prong in his malicious prosecution claim against Sgt. Leaser and Det. Heuser, because it is undisputed that neither of them initiated a criminal proceeding against him. Rather, it was Agent Barlow and the Pennsylvania Attorney General's Office who filed criminal charges against Plaintiff. *See* Police Criminal Complaint and Affidavit

of Probable Cause (Ex. K).  As such, Sgt. Leaser and Det. Heuser are entitled to summary

judgment on Plaintiff's federal and state malicious prosecution claims.

      **B.**    <u>**Plaintiff's Conspiracy Claim (Count IV) Fails.**</u>

      Plaintiff claims that Sgt. Leaser and Det. Heuser conspired with Agent Barlow to violate

Plaintiff's constitutional rights.  However, because there are no underlying constitutional claims,

there can be no conspiracy claims under § 1983.

      Even assuming this Court finds that there are underlying constitutional claims, Plaintiff has

not set forth evidence of a conspiracy.  Claims under the civil rights conspiracy statute must be

pled with factual specificity; mere conclusory allegations that conspiracy existed will not survive.

*Rogers v. Mount Union Borough by Zook*, 816 F. Supp. 308 (M.D. Pa. 1993); *see Musila v. Lock*

*Haven University*, 970 F. Supp. 2d 384 (M.D. Pa. 2013) (A tenured professor at state university

failed to allege any facts, simply asserted legal conclusions that a conspiracy existed, therefore, his

claims were dismissed at a motion to dismiss stage).   Plaintiff must produce evidence of: (1) an

actual violation of a right protected under section 1983; and (2) actions taken in concert by

defendants with the specific intent to violate the right protected under §1983.

      In *Dennis v. DeJong,* 867 F. Supp. 2d 588 (E.D. Pa. 2011), the Court dismissed the

plaintiff's conspiracy claim for lack of evidence showing specific intent.  In *Dennis*, plaintiff

alleged a conspiracy to get a plaintiff/father arrested for alleged abuse of his child because of his

race.  To support the claim, he showed the existence of phone calls between the defendant

childcare workers, defendant district attorney, and defendant police officers with regard to the

investigation and lack of police response into the allegations of abuse against the child.  The

plaintiff/father was ultimately arrested for the abuse.  The Court concluded that there were no

facts alleged which demonstrated any agreement to harm the plaintiff, or that defendants were

acting improperly or conspiring with each other when discussing the abuse and the investigation which led to plaintiff's arrest.

Here, Plaintiff has set forth no evidence of a conspiracy.  A fellow law enforcement officer from another agency asked the Bethlehem Police Department to assist him in catching a male suspected of communicating with a 14 year-old girl for the purpose of meeting to have sex, which is a felony of the first degree in Pennsylvania.  Sergeant Leaser and Det. Heuser – neither of whom had ever met or spoken to Special Agent Barlow – were dispatched to provide that assistance. Heuser Report (Ex. A) at p. 4; D.T. Leaser (Ex. E) at pp. 9:16-23; 11:14-18; D.T. Heuser (Ex. F) at p. 11:10-18.  Agent Barlow advised Sgt. Leaser that he wanted the officers to find and stop a male driving a large, white SUV, possibly a Chrysler Aspen, with either New Jersey tags or coming from New Jersey, who had committed this felony.  Based on the information that Agent Barlow provided, Sgt. Leaser and Det. Heuser located, stopped, and detained the driver of the vehicle until Agent Barlow arrived on scene and took over the investigation.  There have been no facts whatsoever discovered in this case to demonstrate any agreement to harm Plaintiff, or that Sgt. Leaser, Det. Heuser, and Agent Barlow were acting improperly or conspiring with each other when discussing the investigation that led to Plaintiff's arrest.

Since none of the undisputed evidence demonstrates an agreement between Agent Barlow and Sgt. Leaser and Det. Heuser to violate Plaintiff's rights, Plaintiff's conspiracy claim fails as a matter of law and must be dismissed.

## C.   Plaintiff's Due Process Claim (Count V) Fails as a Matter of Law.

Plaintiff claims that Sgt. Leaser and Det. Heuser falsely arrested, imprisoned, and maliciously prosecuted Plaintiff, and conspired with Co-Defendant Agent Barlow to do so, all in violation of Plaintiff's Fourteenth Amendment due process rights.  However, under the specific

provision rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

The standards and procedures for arrest and detention are derived from the *Fourth Amendment* and its common-law antecedents. *Gerstein v. Pugh*, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court again did not recognize a substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause.

The Supreme Court in *Manual v. City of Joliet*, 137 S. Ct. 911 (2017), reiterated that a claim to contest the legality of an arrest and pretrial confinement is made under the Fourth, not the Fourteenth Amendment. More recently, the Third Circuit, relying on *Manual*, held that the Fourth, not the Fourteenth Amendment is the proper vehicle to challenge an arrest and detention. *Delade v. Cargan*, 972 F.3d 207 (3rd Cir. 2020). In fact, the Third Circuit held, "we have not delineated when a claim of unlawful pretrial detention stops implicating the Fourth Amendment and begins to fall under the Due Process Clause of the Fourteenth Amendment." *Id.* at 212-213.

Here, Plaintiff's claims are more appropriately brought under the more specific Fourth Amendment, as in *Delade* and *Manual*. Therefore, Plaintiff's Due Process claim must be dismissed.

D.      **Sergeant Leaser and Det. Heuser Are Entitled to Qualified Immunity.**

Putting aside the fact that there was not a violation in the first instance, Sgt. Leaser and Det. Heuser are, at minimum, entitled to qualified immunity, as it was not clearly established at the time of the incident – or even now – that stopping a vehicle matching the description of one

being sought by a fellow law enforcement agent within a block of the designated meeting spot and detaining the driver by handcuffing him and placing him in a warm police cruiser for less than nine minutes until the other agent arrives on scene was constitutionally impermissible.

The United States Supreme Court has held that qualified immunity serves to "insulate government officials from liability for assumable damages when the discretionary conduct of that official did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The standard for applying qualified immunity is an objective one: the Supreme Court has instructed that the inquiry must focus on the "objective reasonableness of an official's conduct as measured by reference to clearly establish law." *Id.*

The Supreme Court further explained that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say official action is protected by qualified immunity unless the very action in question has been declared unlawful, but it is to say that the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1982). Qualified immunity attaches unless a plaintiff demonstrates that the official's conduct violated a clearly established right. *Id.*

Qualified immunity is an immunity from suit, and not a mere defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). As a general rule, the issue of whether an official is entitled to qualified immunity should be determined prior to trial, as the purpose of qualified immunity is to protect officials and public employees from undergoing the burdens of litigation. *Id.*; *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Anderson*, 483 U.S. at 646, n. 6; *Mitchell v. Forsythe*, 472 U.S. 511 (1985); *Harlow*, 457 U.S. at 818.

24

In *Hunter v. Bryant*, the Court recognized that "the qualified immunity standard gives ample room for mistakes of judgment in protecting all but the plainly incompetent or those who knowingly violate the law. This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." 502 U.S. 224 at 137.

In *Saucier v. Katz*, the Supreme Court explained why a Court should conduct an additional level of analysis in determining whether an officer is entitled to qualified immunity as follows:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine who the relevant legal doctrine, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular (action) is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer's entitled to the qualified immunity defense.

533 U.S. 194, 205 (2001).  Moreover, the Supreme Court has held that the two-step procedure outlined in *Saucier* is no longer mandatory:

> When reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The Judges of the District Courts and the Courts of Appeal should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified circumstances in the particular case at hand.

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

As the Supreme Court instructs, "the relevant, dispositive inquiry in determining whether a right is clearly established, is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson*, 483 U.S. at 640) (explaining that a right is "clearly

established" when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that *every 'reasonable official would have understood that what he is doing violates that right*.'") (emphasis added).  Moreover, the protection of qualified immunity applies regardless of whether the government official error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Groh v. Ramirez*, 540 U.S. 551, 556 (2004). Moreover, "this inquiry ... must be undertaken in light of the specific context of the case, not as a broad general proposition." *Curly v. Klem,* 298 F.3d 271 (3d Cir. 2002).  With regard to this second inquiry, courts should not deny summary judgment even if a material fact remains.  *Wilson v. Layne,* 526 U.S. 603, 119 S. Ct. 1692 (1999).  Summary judgment should be denied only when the law put the defendant on notice that his conduct was clearly unlawful.  *Id.* at 202, 2156.

More recently, the Supreme Court stressed in *White v. Pauly* that it was "again necessary to reiterate the longstanding principle that 'clearly established law' should *not* be defined 'at a high level of generality.'"  137 S. Ct. 538, 553 (2017).  The Court opined that, if the specificity to the facts of the case is not enforced, "plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."  *Id.* (citing *Anderson*, 483 U. S. at 639).  In *White*, the Supreme Court found that the lower court failed to identify a single case where an officer acting under similar circumstances violated the Fourth Amendment.  *Id.*

As the Third Circuit has explained, this is a high hurdle for a plaintiff to overcome, because qualified immunity provides "ample protection to all but the plainly incompetent, or those who knowingly violate the law." *Blackhawk v. Pennsylvania*, 381 F.3d 202, 215 (3d. Cir. 2004*)*. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id*.

Here, Sgt. Leaser and Det. Heuser are, at a minimum, entitled to the protection of qualified immunity.  First and foremost, it is not so sufficiently clear that "every reasonable officer would have understood" that it was not permissible for a police officer to rely upon information provided by another law enforcement officer that an individual was believed to have committed a felony and to stop and briefly detain that individual by handcuffing him and placing him in a warm police cruiser until the other agent could arrive on scene and complete his investigation.  To the contrary, a review of the case law establishes that officers are permitted to rely on information provided by another officer (*United States v. Whitfield*, 634 F.3d 741, 745 (3d Cir. 2010); *United States v. Robertson*, 305 F.3d 164, 168 (3d Cir. 2002)), that Sgt. Leaser and Det. Heuser had reasonable suspicion to stop Plaintiff based upon the information provided by Agent Barlow, and that handcuffing a suspect and placing him in a police car does not transform a *Terry* stop into a de facto arrest.  *Carter*, No. 19-78, 2019 U.S. Dist. LEXIS 206777, at *11.

Therefore, in light of the existing case law, this Court should find that Sgt. Leaser and Det. Heuser are, at a minimum, entitled to qualified immunity, and summary judgment should be entered in their favor on all of Plaintiff's claims.  Indeed, as noted by the Supreme Court in *White*, absent a controlling case which specifically places an officer on notice with "particularly" that the detention was violative of the Constitution, Sgt. Leaser and Det. Heuser must be afforded qualified immunity. Put another way, Supreme Court precedent requires that Plaintiff point to a case that is sufficiently specific and similar to the present case that serves as notice of "clear and controlling law" to alert the officer that Sgt. Leaser and Det. Heuser could not briefly detain Plaintiff in this circumstance.  On the contrary, the case law cited above demonstrates that Sgt. Leaser and Det. Heuser are entitled to qualified immunity.

**E.**   **Plaintiff's *Monell* and Supervisory Claims Fail as a Matter of Law.**

    **1.**   **Plaintiff's *Monell* Claim (Count VII) Fails.**

Plaintiff's Complaint simply avers that the alleged unconstitutional conduct by Sgt. Leaser and Det. Heuser was due to either policy, practice, or custom of deliberate indifference to the constitutional rights of its citizens or a failure of the City of train, supervise, and discipline its police officers.  Compl. (Doc. 1) at Count VII.

First, a municipality can be held liable only where one of its employees is primarily liable under § 1983. *Monell v. New York Department of Social Services*, 463 U.S. 658 (1978); *Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989); *City of Los Angeles v. Heller*, 475 U.S. 796 (1986). A municipality cannot be liable under § 1983 under a theory of respondeat superior.  *Monell*, 463 U.S. at 694.  Thus, in order to establish a constitutional claim against the City of Bethlehem, Plaintiff must first establish a constitutional violation against Sgt. Leaser or Det. Heuser.  It is well-settled that, if there was no violation in the first place, then there can be no derivative municipal liability claim.  *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  As indicated throughout this Memorandum of Law, Plaintiff has failed to establish an underlying constitutional violation which, on its own, is fatal to his *Monell* claim, and his claim fails for this reason alone.

Second, as this Court has held, "in order to establish liability under Section 1983 against a local government unit or a supervisory official, a plaintiff must demonstrate: (1) the deprivation of a constitutional right; (2) that the action was taken pursuant to a custom or policy of the local government unit; and (3) that the action was the cause of the deprivation." *Fry v. Smoker et. al.*, 2012 U.S. Dist. LEXIS 64939, *8 (E.D. Pa., Schiller, J.) (citing *Monell*, 436 U.S. 658 at 691). "Identifying a 'policy ensures that a municipality is held liable only for those

deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.'" *Id.* at *9 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403-04 (1997)). "An 'act performed pursuant to a "custom" that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.'" *Id.* Furthermore, Plaintiff must produce evidence that the alleged deliberate conduct was the "moving force" that caused the constitutional injury. *Id.*

Even assuming *arguendo* that Plaintiff could establish an underlying constitutional violation, Plaintiff's *Monell* claim still fails. Plaintiff asserts, *inter alia*, that the City of Bethlehem had a policy, practice, or custom of having its officers engage in false stops and "ruses" "to effectuate arrests and violate the constitutional rights of citizens." Compl. (Doc. 1) at ¶¶ 155-56. Despite having the opportunity to thoroughly develop a factual record through discovery, Plaintiff elected not to request any policies or procedures from the City of Bethlehem and chose not to take the depositions of any policy-makers, such as Defendants Mayor Donchez or former Chief DiLuzio. Accordingly, Plaintiff has discovered no evidence whatsoever to support his bald and very general allegations.

A municipality's failure to act, specifically a failure to train or supervise its officials adequately or failure to respond to complaints about the allegedly unconstitutional acts of employees, can also be an official policy subjecting it to §1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "Only where failure to train reflects a deliberate or conscious **choice** by a municipality - a 'policy' as defined by our prior cases - can a City be liable for such a failure under §1983." *Id* at 389*. (emphasis added).*

Even proving that an injury or accident could have been avoided if an employee had had better or more training, sufficient to equip him to avoid the injury-causing conduct will not suffice to support a *Monell* claim, a plaintiff must establish that the municipality had notice that the training was deficient in a particular respect and chose that course of training anyway. *Connick v. Thompson*, 131 S. Ct. 1350 (2011).

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 1360; *Bd. of the Cty. v. Brown* 520 U.S 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626.  Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.  *City of Canton v. Harris*, 489 U.S. 378, 398 (1989).   Failure to train can amount to deliberate indifference if a plaintiff can show: (1) municipal policymakers knew that employees would encounter a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause a deprivation of constitutional rights.  *Carter v. City of Phila.,* 181 F.3d 339, 357 (3d Cir. 1999).

In *Butler v. Lamont*, 2017 U.S. Dist. LEXIS 129443 (E.D. Pa. 2017), the Honorable Edward Smith dismissed a *Monell* "failure to train" claim based on the fact that the plaintiff did not present any evidence of similar constitutional violations.  In *Butler*, plaintiff presented four (4) prior lawsuits against the defendants that involved corrections officers facilitating inmate on inmate attacks, three (3) newspaper articles unrelated to his lawsuit and a deposition about mold infestation in the jail.  However, *Butler* involved a correction officer allegedly attacking an inmate.  This Court held that those prior suits, newspaper articles and deposition testimony did

not involve any situations similar to the present case and as such "did not constitute a pattern of similar constitutional violations to establish deliberate indifference." *Id.* at *18-19.

Further, in *Butler*, the Court held that the plaintiff did not present any evidence that the failure to train actually caused his injury. Unsatisfactory training alone cannot impugn liability, a plaintiff must show what specific training a municipality lacks that has a casual nexus with his or her injury. *Id.* at *21.

Here, Plaintiff cannot present any evidence to establish his claim against the City of Bethlehem or the Bethlehem Police Department for liability for failure to train. In order to become a police officer in the City of Bethlehem, an individual must graduate from a certified police academy. The police academy provides training as required through the Municipal Police Officers Education and Training Commission ("MOPETC"). MOPETC dictates training requirements to become a police officer, as well as mandatory training that an officer has to obtain each year to continue to be certified. In addition, all police officers have to take mandatory in-service training every year which is required by the Commonwealth of Pennsylvania to remain a certified police officer. All Bethlehem police officers – and all police officers in Pennsylvania – are required to receive both basic and annual training in order to obtain their legally required certification by the MPOETC. *See* 53 Pa. C.S.A. § 2161.

Numerous courts have found that, where a state imposes training standards, evidence showing adherence to those standards such as Bethlehem's compliance with MPOETC bars any finding that the municipality was "deliberately indifferent." *See, e.g., Carswell*, 381 F.3d at 245; *Tapia v. City of Greenwood*, 965 F.2d 336, 339 (7th Cir. 1992); *Johnson v. City of Milwaukee*, 41 F. Supp. 2d 917, 931 (E.D. of Wis. 1999); *Williams v. Musser*, 1997 WL 403509, at *10 (N.D. of Ill.).

There is simply no basis or evidence that the Bethlehem Police Department does not adequately train or supervise its officers. *See Bradshaw v. Twp. of Middletown*, 296 F. Supp. 2d 526, 549 (D.N.J. 2003), aff'd 145 Fed. Appx. 763, 768 (3d Cir. 2005) (affirming district court's dismissal of § 1983 claim against township for failure to train where plaintiff failed to identify "any examples of specific training that the Township failed to provide").

In short, other than the bare allegations of a general policy, practice, or custom of violating citizen's constitutional rights and "insufficient training" in his complaint, Plaintiff has not: (1) identified a pattern of similar prior incidents, (2) identified any specific training or policies not provided that could reasonably be expected to prevent what he claims was a false arrest, or (3) demonstrated that Bethlehem acted with "deliberate indifference" with regard to training. Thus, Plaintiff's *Monell* claim fails as a matter of law.

### 2. Plaintiff's Claims Against Mayor Donchez and Former Chief DiLuzio (Count VI) Must Be Dismissed as Duplicative.

In his Complaint, Plaintiff asserts claims against both the City and its policy makers – Mayor Donchez and former Police Chief DiLuzio – that are duplicative and simply variations of a *Monell* claim. *See* Compl. (Doc. 1) at Counts VI and VII. As discussed above, since there was no constitutional violation caused by a policy, practice, or custom or failure to train, supervise, or discipline on the part of the City of Bethlehem, the claims against Mayor Donchez and former Chief DiLuzio must also fail.

Even if Plaintiff had otherwise made out a constitutional claim against Sgt. Leaser and Det. Heuser, his allegations against Mayor Donchez and former Chief DiLuzio are legally insufficient. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A supervisor may be

liable for unconstitutional acts of subordinates if "'with deliberate indifference to the consequences, [the supervisor] established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).

Plaintiff names Robert Donchez as Mayor of the City of Bethlehem and Mark DiLuzio as former Chief of Police of the Bethlehem Police Department. This claim is merely duplicative of the *Monell* claim against the City of Bethlehem. Further, there is absolutely no evidence of: (a) a constitutionally deficient custom, practice or policy, and/or (b) constitutionally deficient training, supervision, or discipline of police officers.

Even assuming, *arguendo*, that this Court determines that Plaintiff's constitutional rights were violated, or that the question is too close to call, Mayor Donchez and former Chief DiLuzio are nevertheless entitled to summary judgment. Neither Mayor Donchez nor former Chief DiLuzio: (1) had any contact with Plaintiff in relation to his claims, or (2) had reason to believe that Plaintiff's rights were being violated. Thus, Mayor Donchez and former Chief DiLuzio are entitled to judgment as a matter of law.

### F. Plaintiff's Claim for Intentional Infliction of Emotional Distress (Count X) Fails.

Plaintiff asserts a claim for intentional infliction of emotional distress as a result of his arrest. However, it is clear that any distress Plaintiff has experienced was the result of his own actions, and not the Bethlehem Defendants' brief, nine-minute detention.

Further, the tort of intentional infliction of emotional distress requires that the alleged conduct be so extreme and outrageous as to cause plaintiff emotional distress. *See Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979) (*en banc*). Pennsylvania requires that competent medical evidence

support a claim of alleged intentional distress.  *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987).

Even assuming, *arguendo*, that Plaintiff presented sufficient evidence to survive summary judgment on the false arrest/false imprisonment or conspiracy claim, Plaintiff has set forth no evidence of an intentional infliction of emotional distress.  First, he has not produced any competent medical evidence.  Second, he testified that he saw a counselor, but the focus of the counseling was to try to repair the damage to his marriage caused the fact that he was admittedly emailing another person who was posing as a 14 year-old girl sexually explicit communications and planning to meet that person to have sex.  D.T. Saultz (Ex. C) at pp. 97-98.

In short, Plaintiff has submitted no evidence – expert or otherwise – that he has suffered any emotional distress as a result of the conduct of either Sgt. Leaser or Det. Heuser.  As such, Sgt. Leaser and Det. Heuser are entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

## G.  Plaintiff's State Constitutional Violation Claim Must Be Dismissed.

Count XI of the Plaintiff's Complaint alleges that Sgt. Leaser and Det. Heuser violated the Pennsylvania Constitution.  However, it is well-settled that there is no legally cognizable cause of action for a violation of the Pennsylvania State Constitution.

"[C]ourts within the Third Circuit have found that 'the Pennsylvania Constitution does not confer a private right of action on an individual who seeks to recover damages from a defendant.'" *Kobrick v. Stevens*, No. 3:13-2865, 2017 U.S. Dist. LEXIS 141692, *7 (Sept. 30, 2014) (Connor, J.)(citing *Pollarine v. Boyer*, 2006 U.S. Dist. LEXIS 12465  (E.D. Pa. Jul. 29, 2005)(Surrick, J.)); *see also Kaucher v. County of Bucks*, 2005 U.S. Dist. LEXIS 1679, (E.D. Pa. Feb. 7, 2005)(Kelly, J.) (finding that, in the federal districts, "[i]t has been widely held that the Pennsylvania Constitution does not provide a direct right to damages."); M*artinez v. Marino,*

34

2007 U.S. Dist. LEXIS 44421 (E.D. Pa. 2007) (dismissing a plaintiff's Pennsylvania State

Constitutional claims as there is no separate action for damages under the Pennsylvania State

Constitution).

Accordingly, Plaintiff's claims made under the Pennsylvania Constitution fail as a matter

of law, and Sgt. Leaser and Det. Heuser are entitled to summary judgment on this claim.

**H.      Sgt. Leaser and Det. Heuser Are Entitled to Official Immunity on the State
          Law Claims.**

Even if, for the sake of argument, Plaintiff's state claims of false arrest, false

imprisonment, malicious prosecution, intentional infliction of emotional distress, and violation of

the Pennsylvania Constitution were legally viable, Sgt. Leaser and Det. Heuser should, at a

minimum, be granted "official immunity" under the Tort Claims Act.

The Tort Claims Act permits an employee to raise the defense of "official immunity" as

follows:

> In any action brought against an employee of a local agency for damages
> on account of an injury to a person or property based upon claims arising
> from, or reasonably related to, the office or the performance of the duties
> of the employee, the employee may assert on his own behalf, or the local
> agency may assert on his behalf:
>
>    1.   Defenses which are available at common law to the
>         employee.
>
>    2.   The defense that the conduct of the employee which
>         gave rise to the claim was authorized or required by
>         law, or that he in good faith reasonably believed the
>         conduct was authorized or required by law.
>
>    3.   The defense that the act of the employee which gave
>         rise to the claim was within the policymaking discretion
>         granted to the employee by law. For purposes of this
>         subsection, all acts of members of the governing body
>         of a local agency or of the chief executive officer
>         thereof are deemed to be within the policymaking
>         discretion granted to such person by law.

42 Pa. C.S.A. § 8546(2).

In order to be afforded the protections of "official immunity," the claim asserted must: (1) arise from or be reasonably related to the duties of the employee, (2) the municipality is immune from suit, (3) the actions do not constitute a crime, actual fraud, actual malice, or willful misconduct, and (4) the conduct of the employee was authorized by law, or the official in good faith reasonably believed the conduct was authorized by law, or the act of the employee was within the policy making discretion granted to that employee. *Devatt*, 338 F. Supp. 2d at 599-600.

### Scope of Duties

There is no dispute that the damages asserted by the Plaintiff arise from, are reasonably related to, or are within the scope of duties of Sgt. Leaser's and Det. Heuser's duties as a police officer of the City of Bethlehem Police Department.  Therefore, the first prong of official immunity is satisfied.

### Municipality Immune

As discussed above, since Plaintiff's state tort claims do not fall within one (1) of the eight (8) exceptions to governmental immunity, Sgt. Leaser and Det. Heuser are immune from such claim, and thus, the second element of "official immunity" is met.

### Crime, Actual Fraud, Actual Malice, or Willful Misconduct

Third, to be afforded the defense of official immunity, Sgt. Leaser's and Det. Heuser's actions cannot constitute a crime, actual fraud, actual malice, or willful misconduct.

Willful misconduct has been defined to include various intentional torts, including assault and battery. However, the concept of willful misconduct under the Tort Claims Act has been interpreted differently for police officers than for other municipal employees. *See Renk v. City of Pittsburgh*, 641 A.2d 289 (Pa. 1994).  Specifically, "willful misconduct," as used in § 8550,

36

"requires that the defendant actually knew that his conduct was illegal." *Schorr v. Borough of Lemoyne,* 2002 U.S. Dist. LEXIS 25668, at *25 (M.D. Pa. Dec. 27, 2002) (citations omitted).

There has been no evidence that either Sgt. Leaser's or Det. Heuser's actions constituted a crime, that he acted with malice, or that he engaged in willful misconduct. Rather, the video clearly demonstrates that Sgt. Leaser and Det. Heuser did nothing more than assist another law enforcement agency by locating and briefly detaining Plaintiff at the request of Agent Barlow until Agent Barlow could arrive on scene.

### *Good Faith Belief*

The Tort Claims Act grants official immunity for local agency employees when the conduct of the employee which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law. 42 Pa. C.S.A. § 8546(2). This defense is analogous to qualified immunity in federal claims and should be determined before trial. *Dorsey v. Redman*, 615 Pa. 328, 96 A.3d 332 (2012).

Here, again, the only reason Sgt. Leaser and Det. Heuser encountered Plaintiff is because they were asked to assist another law enforcement agency by locating a suspected child predator based upon information provided by Agent Barlow and briefly detaining that suspect until Agent Barlow could arrive on scene and complete his investigation. Sgt. Leaser and Det. Heuser acted in a good faith belief that Plaintiff was the suspect that Agent Barlow was seeking – and, in fact, he was that suspect. As such, this final prong of official immunity is met and thus, Sgt. Leaser and Det. Heuser are entitled to official immunity.

### I.      **Plaintiff's Request for Punitive Damages Must be Dismissed.**

Even if this Court does not dismiss Plaintiff's claims in total, Plaintiff's demand for punitive damages against Sgt. Leaser and Det. Heuser should be dismissed.

"A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "While the *Smith* Court determined that it was unnecessary to show actual malice to qualify for a punitive award…its intent standard, at a minimum, required recklessness in its subjective form. The Court referred to a 'subjective consciousness' of a risk of injury or illegality and a '"criminal indifference to civil obligations."'" *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999) (discussing *Smith* in the context of a Title VII case).

There is no evidence that either Sgt. Leaser or Det. Heuser was motivated by an evil motive or that they were recklessly indifferent to Plaintiff's constitutional rights. Instead, the undisputed evidence in this case makes it clear that Sgt. Leaser and Det. Heuser did nothing more than stop a vehicle and detain the driver at the request of another law enforcement agent. Moreover, the video evidence makes clear that at all times both Sgt. Leaser and Det. Heuser were courteous and professional to Plaintiff. *See* Heuser Car Cam (Ex. G); Heuser Front Cam (Ex. H); Leaser Front Cam (Ex. J). Plaintiff has presented no evidence to the contrary. As such, Plaintiff's request for punitive damages must be dismissed.

## VI.   <u>CONCLUSION</u>

Based on the foregoing, Plaintiff has failed to establish the requisite elements of any of the claims contained in the Complaint. Therefore, the Bethlehem Defendants respectfully request that this Court enter an Order granting summary judgment with prejudice in their favor and against Plaintiff on all claims in accordance with Federal Rule of Civil Procedure 56.

**MacMain, Connell & Leinhauser, LLC**

Dated: <u>December 16, 2020</u>          By:     <u>*/s/ David J. MacMain*</u>
                                        David J. MacMain
                                        Attorney I.D. No. 59320
                                        Janelle E. Fulton
                                        Attorney I.D. No. 80027
                                        433 W. Market Street, Suite 200
                                        West Chester, PA 19382
                                        *Attorneys for the Bethlehem Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of December 2020, the foregoing was filed electronically and is available for viewing and downloading from the United States District Court of the Eastern District of Pennsylvania. All counsel of record were served via electronic notification.

Fredrick E. Charles, Esquire
441 Linden Street
Allentown, PA 18102
TheCharlesLawOffice@gmail.com
*Attorney for Plaintiff*

Kathy A. Le, Esquire
Deputy Attorney General
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
kle@attorneygeneral.gov
*Attorney for Defendant Special Agent Eric Barlow*

**MacMain, Connell & Leinhauser, LLC**

By:     */s/ David J. MacMain*
David J. MacMain
Attorney I.D. No. 59320
433 W. Market Street, Suite 200
West Chester, PA 19382
*Attorneys for the Bethlehem Defendants*