IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT ANDREW SAULTZ, | : | |
| Plaintiff | : | **NO. 19-cv-05778-JMY** |
| vs. | : | |
| | : | **CIVIL ACTION** |
| COMMONWEALTH OF PENNSYLVANIA | : | |
| OFFICE OF ATTORNEY GENERAL. JOSH SHAPIRO | : | |
| ATTORNEY GENERAL | : | |
| and | : | **JURY TRIAL DEMANDED** |
| ATTORNEY GENERAL JOSH SHAPIRO | : | |
| Office of the Attorney General | : | |
| and | : | |
| SPECIAL AGENT ERIC J. BARLOW | : | |
| Office of the Attorney General Office | : | |
| and | : | |
| CITY OF BETHLEHEM | : | |
| and | : | |
| ROBERT DONCHEZ, MAYOR | : | |
| City of Bethlehem | : | |
| and | : | |
| MARK DiLUZIO, CHIEF OF POLICE | : | |
| City of Bethlehem, Police Department | : | |
| and | : | |
| SERGEANT MICHAEL LEASER, Badge #392 | : | |
| City of Bethlehem Police Department | : | |
| and | : | |
| OFFICER DAWN HEUSER, Badge #439 | : | |
| City of Bethlehem Police Department | : | |
| and | : | |
| OFFICER/SERGEANT JOHN DOE | : | |
| City of Bethlehem Police Department, | : | |
| Defendants | : | |

## BRIEF IN OPPOSITION TO DEFENDANT ERIC J. BARLOW'S MOTION FOR SUMMARY JUDGMENT

## I.     PROCEDURAL HISTORY

Plaintiff was arrested on December 10, 2017 and subsequently, formally charged with the

1

criminal offenses of Unlawful Contact With a Minor, Criminal Attempt Involuntary Deviate

Sexual Intercourse and Criminal Use of Communication Facility. A preliminary hearing was held

on January 31, 2018, before Magistrate Judge Roy A. Manwaring, II, at which time additional

charges of Criminal Attempt and Statutory Sexual Assault were added to the Complaint. On

September 20, 2018, all charges against Plaintiff were dismissed pursuant to a *nolle pros* filed by

Deputy Attorney General Michelle A. Laucella (hereinafter "Attorney Laucella") on behalf of the

Commonwealth of Pennsylvania, Office of the Attorney General. On December 9, 2019, Plaintiff

filed a Complaint in the United States District Court for the Eastern District of Pennsylvania. On

April 30, 2020,  Defendant filed his Answer to the Complaint. On December 18, 2020,

Defendant Barlow filed a Motion for Summary Judgment under Federal Rule of Civil Procedure

56(b). Plaintiff files the within Brief in Opposition to Defendant Barlow's Motion for Summary

Judgment, in support of Plaintiff's federal and state claims of false arrest, false imprisonment,

malicious prosecution and in opposition to Defendant Barlow's claim of qualified immunity.

## II.    <u>STATEMENT OF FACTS</u>

Plaintiff hereby incorporates the Statement of Undisputed Facts in Support of Plaintiff's

Brief in Opposition Defendant Barlow's Motion for Summary Judgment, Plaintiff's Response to

Defendant Barlow's Statement of Undisputed Facts and Plaintiff's Statement of Disputed Facts

in support of Plaintiff's Brief in Opposition to Defendant Barlow's Motion for Summary

Judgment.

## III.    <u>STATEMENT OF QUESTIONS PRESENTED</u>

A.    **WHETHER DEFENDANT BARLOW SUBJECTED
         PLAINTIFF TO A FALSE ARREST AND FALSE
         IMPRISONMENT?**

2

**SUGGESTED ANSWER: YES.**

**B.    WHETHER DEFENDANT BARLOW SUBJECTED
PLAINTIFF TO A MALICIOUS PROSECUTION?**

**SUGGESTED ANSWER: YES.**

**C.    WHETHER DEFENDANT BARLOW IS ENTITLED TO
QUALIFIED IMMUNITY FOR SUBJECTING PLAINTIFF
TO FALSE ARREST AND FALSE IMPRISONMENT?**

**SUGGESTED ANSWER: NO.**

## IV.    ARGUMENT

### Standard and Scope of Review

When evaluating a motion for summary judgment, a court "must view the facts in the

light most favorable to the non-moving party," and draw all reasonable inferences in favor of the

same. *Pastore v. Bell Tel. Co.,*24 F.3d 508, 512 (3d Cir.1994). Summary judgment is proper

where the record, taken in its entirety, shows that there "is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *accord*

*Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir.2001). A factual dispute is "genuine" only if

there is sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for

the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505,

91 L.Ed.2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the suit

3

under the applicable law. *Id.*

A court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of it's opponent. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363, (3d Cir.1992). Rather, it remains the "provence of the factfinder to ascertain the believability and weight of the evidence." *Id.* For purposes of considering a motion for summary judgment, the court "should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, [because] a jury ...would be entitled to view the evidence as a whole." *Abramson v. William Patterson College of New Jersey*, 260 F.3d 265, 285 (3d Cir. 2001) (citing *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir.2000).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) "Once the moving party points to evidence demonstrating [that] no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA*, 601 F.3d 212, 216 (3d Cir.2010).

### A. DEFENDANT BARLOW SUBJECTED PLAINTIFF TO A FALSE ARREST AND FALSE IMPRISONMENT.

Plaintiff hereby incorporates his Brief in Response to The Bethlehem Defendants' Motion for Summary Judgment concerning the action of Defendants Leaser and Heuser in subjecting Plaintiff to a custodial arrest at the scene of their stopping Plaintiff's vehicle. Portions of the factual and legal argument contained in said Brief are repeated below.

4

From the outset of his investigation, Defendant Barlow lacked probable cause or a reasonable suspicion that Plaintiff was involved in criminal activity sufficient to direct the Bethlehem Defendants Leaser and Heuser to perform a stop of Plaintiff's vehicle. At the time Defendant Barlow initiated his investigation of Plaintiff, he was aware that individuals do engage in role playing utilizing Craigslist. Defendant Barlow testified:

Q.   Let me ask you this. In your experience in the Predator's Unit and as a police officer, are you aware of groups that engage in role playing on Craigs List or over the internet? Have you ever come across that?

A.   I know they exist... SDMF ¶ 1;

A.   I know they exist. I have never come in contact with - with - I did come in contact with a furry fetish. But outside of that, I know they exist. SDMF ¶ 1

Defendant Barlow further testified:

Q.   Are you aware or were you part of any communications with Mr. Saultz where he indicated that he wanted the person that he was transmitting with to be 18 or older?

A.   No.

Q.   Okay. Was anyone involved in this prosecution, did anyone have email communications with Mr. Saultz other than you?

A.   Another agent did have communications via email with Mr. Saultz prior to me beginning communications on the 9th. SDMF ¶ 2

Q.   Do you know whether Mr. Saultz communicated with that agent that he wanted the person he was transmitting with to be 18 or older?

A.   I now know. I now know that I - - that Mr. Saultz made mention that the Craig's List ad said 18 in those previous conversations. SDMF ¶ 2

5

Defendant Barlow had information available to him that Plaintiff had insisted that the person

with whom he was communicating be eighteen years of age or older as mandated by Craigslist,

however he ignored the above factor in pressing forward with his investigation of Plaintiff.

Prior to directing the Bethlehem Defendants Leaser and Heuser to stop Plaintiff's vehicle

on December 10, 2017, Defendant Barlow lacked probable cause or a reasonable suspicion that

Plaintiff had engaged in criminal activity. When questioned about the identifying factors which

prompted Defendant Barlow to authorize the stop of Plaintiff's vehicle by Defendants Leaser and

Heuser, Defendant Barlow testified:

> Q.    You don't know if the person who is responding to
>        your email was actually a male or female.
>
> A.    I can just use the identifiers he provided, which was
>        referring to himself as a male, and his email coming up
>        as Robert Saultz occasionally.
>
> Q.    ... - other than that, your transmissions with Mr. Saultz, those
>        transmissions don't really give you an identifier as to the
>        race of the person transmitting. Correct?
>
> A.    Correct.
>
> Q.    Or the gender, whether the person was actually a male or
>        Female. Correct?
>
> A.    Outside of how they speak, no. SDMF ¶ 3
>
> Q.    Okay. Or the location from which they're responding to
>        your emails. Where they're located...
>
> Q.    Okay. You don't know the location, the exact location of
>        the other party during these transmissions, do you?
>
> A.    Correct SDMF ¶ 4

When further questioned about his investigation and the lack of reliable identifiers concerning

Plaintiff, Defendant Barlow further testified:

Q.    So if he tells you he's in New Jersey, you have no way of proving that. You don't know if he's in New Jersey, New York or Pennsylvania, do you?

A.    No.

Q.    Okay. And during your – you didn't have a photograph of Mr. Saultz, did you?

A.    No.... SDMF ¶ 5

Q.    ...and you did not know the exact year, make, and model of the Saultz vehicle, the vehicle Mr. Saultz was in. Correct?

A.    Not the year, but he provided the make and model. SDMF ¶ 6

Q.    And you have no way of knowing whether he gave you good information or bad information from the emails.

A.    Correct. SDMF ¶ 7

Q.    And you don't know if he was actually even in a vehicle when he was transmitting with you, do you?

A.    No. SDMF ¶ 8

Q.    ... and nothing in the transmissions identified Mr. Saultz's license plate number, did it?

A.    No.

Q.    And nowhere did he tell you that he had New Jersey license plates, did he?

A.    No. SDMF ¶ 9

Q.    ... within the emails, the only identifier you actually had concerning Mr. Saultz's vehicle was that it was a white SUV possibly an Aspen, correct?

A.    ... I believe he specifically states Chrysler Aspen SUV.

> Q.    ... did he make any statements in emails that this vehicle had recently been cleaned or that he had taken it to a car wash?
>
> A.    I don't recall.
>
> Q.    ... so a clean vehicle wasn't one of your identifiers. Correct?
>
> A.    Not that I recall, no. SDMF ¶ 10

According to Defendant Barlow's testimony, his pre-arranged meeting with Plaintiff was to occur at the Hyatt Hotel, however Plaintiff never showed for the pre-arranged meeting. Defendant Barlow testified:

> Q.    The pre-arranged meeting location that you are referring to originally was the garage at the Hyatt. Correct?
>
> A.    I don't recall if it was specifically the garage. It was the hotel itself, though. He - - he was traveling to the Hyatt.
>
> Q.    Okay. And you went in, actually went into the Hyatt garage looking for Mr. Saultz's vehicle. Correct?
>
> A.    Correct.
>
> Q.    And you never found his vehicle in the Hyatt garage.
>
> A.    Correct. SDMF ¶ 11

Despite Plaintiff's never having arrived at the pre-arranged location of the Hyatt Hotel, Defendant Barlow contends that from the door of the Hyatt Hotel, he saw an Aspen located one hundred yards away from the hotel's entrance. He further contends that he was able to determine at night that the Aspen had New Jersey license plates. SDMF ¶ 2 (Ex. B p. 24:4-17) Defendant Barlow's identifying observation was limited to the make and model of the vehicle.

> Q.    When you looked out the entrance of the Hyatt and saw this white vehicle, were you able to tell whether the operator was

8

male or female?

A. No. SDMF ¶ 12

Q. Were you able to tell the race of the operator?

A. No. SDMF ¶ 13

Q. The age of the operator?

A. No. SDMF ¶ 14

Q. Were you able to tell how many people, if any, were in the vehicle? Whether there was one or more people in the vehicle?

A. No. SDMF ¶ 15

Q: You weren't able to make out the New Jersey license plate numbers, correct?

A. Correct. SDMF ¶ 16

Defendant Barlow further testified that, without having the year of the Saultz vehicle and from a distance of one hundred yards, at night, he was able to conclude that the vehicle had New Jersey license plates solely by the color. Defendant Barlow testified:

Q. How did you know it was a Jersey plate, were you able - - you couldn't make out the numbers, but you could see the lettering that says New Jersey?

A. I can identify - -  the plate by it's yellow color and layout, but not necessarily be able to read the alphanumerics on it. SDMF ¶ 17

Q. ... tell me what the layout is.

A. Just the way a New Jersey license plate looks. I don't know how else to explain it to you. It has a specific tone of yellow and black letters on it. I was able to identify it as a New Jersey plate.

9

> Q.    But New Jersey plates have more than one color, come
>        in more than one color.
>
> A.    I don't know if they do now, but they have evolved over
>        time, yes. SDMF ¶ 18

The color of Plaintiff's vehicle was not an identifying factor in Defendant Barlow's decision to

instruct Defendant Leaser to stop Plaintiff's vehicle. On this point, Defendant Barlow testified:

> Q.    ... but you were staring at a white SUV from a hundred yards
>        away and noting that it was an SUV with Jersey plates **before**
>        Saultz told you he was driving a white SUV. Is that what
>        you just testified to? (*Emphasis added)*
>
> A.    Yes. SDMF ¶ 19
>
> Q.    Okay. So you gazed at that car without having any identifier
>        of that car from Saultz.
>
> A.    Correct. SDMF ¶ 20
>
> Q.    Did you gaze at any other cars parked there that night?
>
> A.    Oh, I'm sure I did, but I don't remember them now.
>
> Q.    Did you gaze at any other license plates on any cars parked that
>        night?
>
> A.    Not that I recall. SDMF ¶ 21
>
> A.    ... I took note of the SUV that was parked alongside of the
>        parking garage with New Jersey plates. **Before** he told me
>        the description.
>
> Q.    Okay. It was before, not after.
>
> A.    Correct. SDMF ¶ 22

On the evening of December 9, 2017 and the early morning of December 10, 2017,

Plaintiff had been traveling on Interstate 78, in snowy conditions, behind a Department of

Transportation salt truck. SDMF ¶ 59 As a result, neither Defendant's vehicle nor its' license plate was in a "clean" condition. On December 10, 2017, Plaintiff's license plate was whitish in color. (SDMF Ex. A:26) Moreover, a factfinder could reasonably conclude that Defendant Barlow erroneously believed that Plaintiff's license plates were yellowish and that he could not accurately identify the color of said license plates from a distance of one hundred yards. A factfinder could further reasonably conclude that, after viewing Plaintiff's Aspen from a hundred yards away and without having any legitimate, probative identifiers to link this vehicle with his electronic transmissions with Plaintiff, Defendant Barlow instructed Defendant Leaser to illegally and unjustifiably perform a stop on said vehicle.

**Lack of Probable Cause or Reasonable Suspicion - Initial Stop of Plaintiff's Vehicle**

A review of the facts of record, including Defendant Barlow's above quoted testimony, reveals that at the time Defendant Barlow ordered Defendant Leaser to stop Plaintiff's vehicle, he did not have sufficient identifiers to provide him with probable cause to arrest or reasonable suspicion to stop Plaintiff's vehicle. As noted in Plaintiff's Brief In Response to Bethlehem Defendants' Motion for Summary Judgment, Defendants Leaser and Heuser, without sufficient probable cause to arrest or a reasonable suspicion to perform a *Terry* stop, stopped Plaintiff's vehicle, ordered Plaintiff out of the vehicle, handcuffed Plaintiff and placed Plaintiff in the rear of the police vehicle awaiting Defendant Barlow's arrival.

Defendants Leaser and Heuser did not have sufficient probable cause or reasonable suspicion to perform a custodial arrest of Plaintiff or a *Terry* stop because Defendant Barlow lacked sufficient information to justify a custodial arrest or a *Terry* stop. Simply put, Defendants Leaser and Heuser could not legally subject Plaintiff to a custodial arrest or a *Terry* stop because

11

Defendant Barlow could not provide sufficient information and identifiers to justify stopping Plaintiff's vehicle and subjecting Plaintiff to custodial arrest. Moreover, since Defendant Barlow lacked sufficient identifiers to form probable cause to arrest or reasonable suspicion to stop Plaintiff, he lacked the legal justification for ordering Defendants Leaser and Heuser to do same. Accordingly, a factfinder could reasonably conclude that, in concert with his communications with Defendants Leaser and Heuser, Defendant Barlow subjected Plaintiff to a false arrest and false imprisonment prior to his arriving at the scene.

### False Arrest, False Imprisonment - Police Headquarters - Formal Charges

After directing Defendants Leaser and Heuser to stop Plaintiff, Defendant Barlow arrived at the scene and viewed Plaintiff's being detained in the rear seat of a Bethlehem police vehicle. At this time, Defendant Barlow illegally, without probable cause and without a proper search warrant performed a search on Plaintiff's vehicle, which was barricaded by three Bethlehem police vehicles. (SDMF Ex. A ¶ 28) After conducting an illegal search of Plaintiff's vehicle, Defendant Barlow, illegally, without probable cause or a proper search warrant conducted an initial search of Plaintiff's cellular phone. At this point, he instructed the Bethlehem Defendants to transport Plaintiff to the Bethlehem Police Headquarters. (SDMF Ex. A ¶ 50)

While Plaintiff was sitting, handcuffed, in police headquarters, Defendant Barlow ordered Plaintiff to give him the passcode to unlock Plaintiff's cellular phone. At this time, Defendant Barlow lacked probable cause to arrest Plaintiff nor did he have any significant identifiers to link Plaintiff as being the individual with whom he was communicating electronically. Defendant Barlow hovered over Plaintiff and in a loud voice ordered Plaintiff to give up his passcode. At this point Plaintiff remained handcuffed and did not sign a consent form. (SDMF Ex. A ¶ 51)

As a result, Plaintiff involuntarily and verbally gave up his cellular phone passcode. (SDMF Ex.

A ¶ 51) Defendant Barlow proceeded to utilize the fruits of his illegal arrest and search of

Plaintiff's vehicle and cellular phone in order to formally charge Plaintiff with the criminal

offenses of Unlawful Contact With Minor - Sexual Offenses, Criminal Attempt - IDI Person

Less Than Sixteen Years of Age and Criminal Use of Communication Facility. Defendant

Barlow subsequently added the charge of Criminal Attempt - Statutory Sexual Assault: Eleven

Years or Older. (SDMF Ex. D p.1) Plaintiff was subsequently transported from the Bethlehem

Headquarters to the Northampton County Prison, where he remained for a period of four days.

### Pennsylvania Law - Police Encounters

Our Supreme Court of Pennsylvania has stated: There are three relevant cognizable

categories of interaction between persons and police: a mere encounter, an investigative

detention, and a custodial detention or arrest. A mere encounter need not be supported by any

level of suspicion, and does not require a person to stop or respond. An "investigative detention,"

or *Terry [v. Ohio,* 392, U.S. 1, 88 S. Ct. 1868, 20 L.Ed. 2d 889 (1968),] stop, must be supported

by reasonable suspicion; it subjects a person to a stop and a period of detention, but does not

involve such coercive conditions as to constitute the functional equivalent of an arrest. An arrest

or custodial detention must be supported by probable cause. *Chase,* 960 A.2d at 117. Upon a

review of the facts of record in the light most favorable to the non-moving party Plaintiff, a

factfinder could reasonably determine that Defendants Leaser and Heuser subjected Plaintiff to a

false arrest without probable cause and to false imprisonment. In their Memorandum Defendants

attempt to argue that Defendants engaged in an investigative *Terry stop* and that they possessed

reasonable suspicion for said stop. Contrary to Defendants' argument, Defendants Leaser and

Heuser subjected Plaintiff to a custodial arrest without probable cause.

The United States Court of Appeals for the Third Circuit has addressed the issue of when an individual is **in custody** for a *Miranda* analysis. In *United States v. Jacobs,* 431 F.3d 99 (2005) the Court sets forth three differently worded tests for when a person is in custody as follows:

> 1.   When the person has been deprived of his or her freedom in some significant way;
>
> 2.   When a reasonable person would perceive that he or she was not at liberty to terminate the interrogation and leave;
>
> 3.   When there is restraint on the person's freedom of movement of the degree associated with a formal arrest. More clear is that the determination of custody is an objective inquiry. (That is, what a reasonable person would believe based on the circumstances of the interrogation.) *Jacobs at 104.*

The court in *Jacobs* further held:

> In fact, the very definition of being 'in custody' is essentially being 'compelled to be somewhere' (two of the three tests for when a person is in custody are (1) when the person has been deprived of his or her freedom in some significant way, and (2) when a reasonable person would perceive that she or he was not at liberty to terminate the interrogation and leave.) *Jacobs at 106.*

Clearly, by removing Plaintiff from his vehicle, handcuffing him and placing him in the backseat of a police vehicle, Defendants Leaser and Heuser had taken Plaintiff into custody. Moreover, Plaintiff was deprived of his freedom in a significant way, reasonably perceived that he was not at liberty to leave the scene and subjected to a restraint on his freedom of movement of a degree associated with a formal arrest. Plaintiff reasonably believed that he was placed in custody of Defendants Leaser and Heuser and continued to ask why he was being arrested by Defendants

14

Leaser and Heuser. SDMF ¶ 29, (SDMF Ex. A ¶ 38)

## Lack of Probable Cause

The Third Circuit has addressed the mandate of probable cause necessary in order to

effectuate a legal arrest and has held:

> In assessing the presence of probable cause, a court must determine:
> the fact pattern the officer encountered and, in light of that, whether the
> arresting officer had probable cause to believe that a criminal offense has
> been or is being committed. The court has explained the standard as
> whether, at the moment the arrest was made, the officers had probable
> cause to make it...whether at that moment the facts and circumstances
> within their knowledge and of which they had reasonably trustworthy
> information were sufficient to warrant a prudent man in believing that the
> Petitioner had committed or was committing an offense. **Mere suspicion,
> however is insufficient... Clarification of the specific factual scenario
> must precede the probable cause inquiry.** We conclude that determining
> these facts was properly the job for the jury. _Snell v. City of York,
> Pennsylvania,_ 564 F.3d 659 (2009). (_Emphasis added_)

Our federal courts have further held that:

> An investigative detention is a Fourth Amendment seizure of
> **limited scope and duration** requiring reasonable suspicion of
> criminal activity. _Lundstrom v. Romero,_ 616 F.3d 1108, 1120
> (10th Cir. 2010) An officer who stops and **briefly** detains a
> person for questioning must be able to point to specific and
> articulable facts which, taken together with rational inferences
> from those facts, reasonable warrant that intrusion. _United States v.
> Davis,_ 94 F.3d 1465, 1468 (10th Cir. 1996) (Citing _Terry v. Ohio,_
> 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968) Reasonable
> suspicion does not rise to the level of probable cause, but it does
> demand something more than an inchoate and unparticularized
> suspicion or hunch. _Id._

## False Arrest/False Imprisonment - Initial Stop

Prior to December 9, 2017, Defendant Barlow had never met or worked with Defendant

Leaser. SDMF ¶ 23  Defendant Barlow provided Defendant Leaser with limited

information concerning his investigation and failed to provide facts sufficient for Defendant Leaser to have probable cause to arrest Plaintiff. SDMF ¶ 24 Defendant Barlow failed to provide Defendant Leaser with facts sufficient to provide reasonable suspicion to justify Defendant Leaser's initial detention, handcuffing and arresting of Plaintiff. SDMF ¶ 25 Defendant Barlow further failed to provide Defendant Heuser sufficient identifying factors in order to stop Plaintiff's vehicle. SDMF ¶ 26 The facts provided by Defendant Barlow to Defendants Leaser and Heuser were not only insufficient to provide them with probable cause for the arrest, said facts were insufficient to provide reasonable suspicion for an investigative stop.

Defendant Barlow had no contact with Defendant Leaser from the time Defendant Leaser initially stopped Plaintiff's vehicle, until he demanded that Plaintiff exit the vehicle and handcuffed Plaintiff. SDMF ¶ 27 At the time Defendant Leaser initially spoke with Plaintiff, he did not have articulable facts as to why he was stopping Plaintiff's vehicle. SDMF ¶ 28 Moreover, when asked by Plaintiff why he was being stopped, Defendant Leaser gave a false answer and could not specifically advise Plaintiff why he was being stopped. SDMF ¶ 29 At this point in his encounter with the Plaintiff, Defendant Leaser asked Plaintiff to exit his vehicle, while he looked into the vehicle and saw Plaintiff's phone. SDMF ¶ 30

Defendant Leaser lacked articulable facts to believe that Plaintiff had been involved in criminal activity nor did he possess probable cause for an arrest. Defendant Barlow further failed to provide Defendant Leaser with articulable facts for Defendant Leaser to have a reasonable suspicion that Plaintiff had committed a crime. SDMF ¶ 31  Moreover, Defendant Barlow never advised Defendant Leaser not to handcuff Plaintiff or place him in the rear of a police vehicle. SDMF ¶ 32

Defendant Barlow was not able to provide Defendants Leaser and Heuser with articulable facts sufficient to form probable cause to perform a custodial arrest on Plaintiff nor sufficient articulable facts to form a reasonable belief that Plaintiff was involved in criminal activity. Defendant Barlow did not possess such facts. At the time Defendant Barlow advised Defendants Leaser and Heuser to stop Plaintiff's vehicle which was traveling away from the Hyatt Hotel, Defendant Barlow lacked sufficient reasonable identifying facts to authorize or request Defendants Leaser and Heuser to stop Plaintiff's vehicle.

### False Arrest/False Imprisonment - Police Headquarters - Formal Charges

After conducting an illegal search and seizure of Plaintiff's automobile and cellular phone, Defendant Barlow utilized the fruits of this illegal search and seizure to file formal criminal charges against Plaintiff. As a result of the filing of the aforesaid charges, Plaintiff was formally arrested and bail was set at Two Hundred Thousand ($ 200,000.00) Dollars. Plaintiff was transported to and incarcerated in the Northampton County Prison for a period of four (4) days, during which time Plaintiff suffered from a severe medical issues. Plaintiff was delayed in obtaining proper medication for his medical condition during the period that he was in incarcerated in the Northampton County Prison.

Accordingly, it is respectfully submitted that a factfinder could reasonably conclude that Defendant Barlow illegally orchestrated an illegal custodial arrest without probable cause and false imprisonment of Plaintiff from the time of the initial stop by Defendants Leaser and Heuser through Plaintiff being transported and detained at the Bethlehem Police Headquarters. A factfinder could further reasonably conclude that Defendant Barlow subjected Plaintiff to a false arrest on the formal charges filed and to a false imprisonment during the period that Plaintiff was

transported from the Bethlehem Police Department to the Northampton County Prison and incarcerated for a period of four days. As such, Defendant Barlow's Motion For Summary Judgment concerning Plaintiff's federal and state claims for false arrest and false imprisonment should be dismissed by this Honorable Court.

## B.   DEFENDANT BARLOW SUBJECTED PLAINTIFF TO A MALICIOUS PROSECUTION.

The United States Third Circuit Court of Appeals has addressed the mandates for a Plaintiff to establish a malicious prosecution claim. In *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d. Cir. 2017), the Third Circuit held that to establish a prosecution claim Plaintiff must show (1) the Defendant initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the Defendant initiated the proceeding without probable cause; (4) the Defendant acted maliciously or for a purpose other than bringing Plaintiff to justice; and (5) the Plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. It is respectfully submitted that all of the mandates for establishing a malicious prosecution of Plaintiff by Defendant Barlow are present in the within matter.

### Defendant Barlow's Malice Against Plaintiff

From the outset of Defendant Barlow's investigation on December 9, 2017, through the dismissal/nolle prossing of the criminal charges against Plaintiff on September 4, 2018, Defendant Barlow acted with complete malice against Plaintiff and for a purpose other than bringing Plaintiff to justice. During the course of the investigation, Defendant Barlow's malice against Plaintiff included:

> 1.   Defendant Barlow's ordering Defendant Leaser to stop Plaintiff's vehicle on December 10, 2017, without sufficient articulable facts

18

or identifiers to justify the Bethlehem Defendants' stopping Plaintiff's vehicle, handcuffing Plaintiff and placing Plaintiff in the rear seat of a police vehicle.

2.    After arriving at the scene of the stop of Plaintiff's vehicle, Defendant Barlow, without probable cause or a valid search warrant or exigent circumstances searched Plaintiff's vehicle.

3.    Defendant Barlow, without probable cause, or a valid search warrant or exigent circumstances, reached into Plaintiff's vehicle and seized Plaintiff's cellular phone.

4.    Defendant Barlow, without probable cause, or a valid search warrant or exigent circumstances manipulated Plaintiff's cellular phone and ordered that Plaintiff be transported to the Bethlehem Police Headquarters.

5.    While Plaintiff was handcuffed in Bethlehem Police Headquarters Defendant Barlow hovered over Plaintiff in a threatening manner, yelled at Plaintiff and demanded that Plaintiff give Defendant Barlow the code to unlock Plaintiff's cellular phone.

6.    Defendant Barlow intimidated Plaintiff and forced Plaintiff to verbally give him the passcode to unlock Plaintiff's cellular phone.

7.    Without probable cause, a valid search warrant and/or Plaintiff's voluntary consent, Defendant Barlow conducted an illegal search of Plaintiff's cellular phone

8.    Defendant Barlow utilized the fruits of his illegal search and seizure to file formal criminal charges against Plaintiff, including Criminal Unlawful Contact With Minor - Sexual Offenses, Criminal Attempt - IDI Person Less Than Sixteen Years of Age and Criminal Use of Communication Facility, all felonies.

Defendant Barlow's malice toward Plaintiff is further revealed by his testimony concerning his original encounter with Plaintiff and his subsequent conversation with Plaintiff prior to formally filing the above stated criminal charges. Concerning his initial observation of Plaintiff at the scene, Defendant Barlow testified:

19

Q.    Based on your experience and training, you did not
      believe there was anything wrong with seeing
      Mr. Saultz handcuffed in the back of the police
      Vehicle when you arrived at the scene. Correct?

A.    Correct. SDMF ¶ 33

Q.    You did not believe that there was anything wrong with
      entering Mr. Saultz's car without a search warrant. Correct?

A.    Correct. SDMF ¶ 34

Q.    And you didn't think there was anything wrong with seizing
      the phone on the front seat without a search warrant.

A.    Correct. SDMF ¶ 35

Q.    At which time the car was parked. Correct?

A.    Correct. It was parked - - it was locked and secured. In place.
      SDMF ¶ 36

Defendant Barlow's malice is further evident by his electing to file formal criminal charges

after interviewing Plaintiff at Bethlehem Police Headquarters. Concerning said interview and

Plaintiff's assertion that he believed he was communicating with an older individual, Defendant

Barlow testified

Q.    ..... let me ask you something. You realize that these postings
      were on Craig's List. Correct?

A.    Yes. SDMF ¶ 37

Q.    And doesn't Craig's List mandate that people who post be
      eighteen years or older? Isn't that a mandate of Craig's List?

A.    It is. SDMF ¶ 38

Q.    And you were aware of that that night.

A.    Yes. SDMF ¶ 39

Q.    And when you talked to Mr. Saultz at headquarters, before you searched his car (sic - phone), he told you that he was going there to meet an older woman, did he not?

A.    He did. SDMF ¶ 40

Q.    Ane he also told you that he felt like he was cheating on his wife because he was going there to meet an older woman. Correct?

A.    He did. SDMF ¶ 41

Q.    Okay. And that's before you searched his phone.

A.    I don't remember the order of - -he did say that, though. SDMF ¶ 42

Despite the above conversation, Defendant Barlow proceeded to formally arrest Plaintiff.

Defendant Barlow's malice against Plaintiff is further revealed by his actions prior to and during the preliminary hearing before Magistrate Judge Roy A. Manwaring, II. Prior to the aforesaid preliminary hearing, Defendant Barlow, as the prosecuting officer and Attorney Laucella, as the prosecuting attorney, on behalf of the Commonwealth, added the additional offense of Criminal Attempt - Statutory Sexual Assault: Eleven Years of Age or Older to the charges against Plaintiff. Defendant Barlow's malice is further revealed by his testimony at the preliminary hearing. In response to direct questioning by Attorney Laucella, Defendant Barlow offered perjured, false testimony under oath concerning his illegal and warrantless search of the Plaintiff's vehicle and the Plaintiff's cellular phone.

Defendant Barlow offered further perjured/false testimony under oath concerning his seizure of Plaintiff's cellular phone. Defendant Barlow's perjured/false testimony included that, at the time he illegally seized Plaintiff's phone from Plaintiff's vehicle, his last text message to Plaintiff, made more than fifteen minutes earlier, allegedly appeared in full on Plaintiff's

21

message board. (SDMF Ex. A ¶¶ 22-25 ) On December 10, 2017, Plaintiff owned a Droid Turbo

X cellular phone which locked after two minutes of non-use. As a result, it was physically

impossible for Defendant Barlow to view on the message screen any message that was sent more

than two minutes earlier than the time he viewed the message screen. Defendant Barlow's last

message to Plaintiff's phone was made approximately fifteen minutes earlier and as such,

Defendant Barlow could not view any text message that he allegedly made to Plaintiff's phone. It

is for this reason that Defendant Barlow hovered over Plaintiff at Bethlehem Police

Headquarters, intimidated Plaintiff and ordered Plaintiff to provide the code to unlock the

cellular phone so that Defendant Barlow could retrieve any messages for the first time. (SDMF

Ex. A ¶¶ 51, 63)

Defendant's malice against Plaintiff is further revealed by Defendant Barlow's insistence

on moving forward with the criminal charges against Plaintiff and testifying at a Suppression

Hearing scheduled before the Honorable Jennifer V. Sletvold (hereinafter "Judge Sletvold"),

Judge of the Court of Common Pleas of Northampton County. Defendant's malice against

Plaintiff and his desire to convict Plaintiff, rather than afford Plaintiff proper justice, is confirmed

by the manner in which Attorney Laucella nolle prossed/dismissed the charges against Plaintiff.

The reason Attorney Laucella gave Defendant Barlow for nolle prossing/dismissing said charges.

As to the reasons given by Attorney Laucella to Defendant Barlow for nolle prossing/dismissing

the criminal charges against Plaintiff, Defendant Barlow testified:

> Q.    ... Attorney Laucella told you that they were going to
> nolle pros the case because ... defense attorney wanted
> access to your computer. Correct?
>
> A.    Yes. SDMF ¶ 43

Q.    Well, what did they exactly tell you? They didn't want to
      set a bad precedent? Or what did they tell you concerning
      setting a precedent?

A.    They didn't want to have law enforcement turning over
      their law enforcement issued devices for communications
      to defense counsel. SDMF ¶ 44

Q.    And did she say that would be a bad precedent, Attorney
      Laucella? They felt that was a bad precedent?

A.    She didn't want it to start happening with our cases. SDMF ¶ 45

During her communication and interaction with Plaintiff's criminal defense attorney, Eric

K. Dowdle, Esquire (hereinafter "Attorney Dowdle"), Attorney Laucella gave a completely

different reason for nolle prossing/dismissing the criminal charges against Plaintiff. SDMF ¶ 46

As a result of Defendant Barlow's testimony at the preliminary, Attorney Dowdle filed an

Amended Omnibus Pre-Trial Motion which included a motion to suppress Defendant Barlow's

illegal search of Plaintiff cellular telephone, Defendant Barlow's illegal search of Plaintiff's

vehicle, Defendant Barlow's illegal arrest of Plaintiff and a Motion to Compel Discovery. SDMF

¶ 47

Pursuant to his Amended Omnibus Pre-Trial Motion, Attorney Dowdle met with

Attorney Laucella and Judge Sletvold. During this conference, Judge Sletvold ordered Attorney

Laucella to fully comply with Attorney Dowdle's discovery requests. SDMF ¶ 48 Prior to a

scheduled hearing on Attorney Dowdle's Motion to Suppress, Attorney Laucella met with

Attorney Dowdle privately and broke down crying. SDMF ¶ 49 Attorney Laucella advised

Attorney Dowdle that she did not trust Defendant Barlow to be truthful in his court testimony

concerning his arrest of Plaintiff. She further told Attorney Dowdle that she believed Defendant

23

Barlow would perjure himself by giving false testimony under oath concerning his search of Plaintiff's vehicle and his search of Plaintiff's cellular phone. SDMF ¶ 50

Attorney Laucella advised Attorney Dowdle that she believed that Defendant Barlow knows better than to do what he did in searching Plaintiff's vehicle and cellular phone prior to arresting Plaintiff and that he would commit perjury by making false statement under oath and say anything in order to have his case survive the suppression motion and be presented for a trial before a judge and/or a jury or a possible guilty plea. SDMF ¶ 51 Attorney Laucella further advised Attorney Dowdle that, in order to prevent Defendant Barlow from committing perjury and/or making false statements under oath in order to survive the suppression motion, she was going to call her supervisors and request that the case against Plaintiff be nolle prossed/ dismissed. SDMF ¶ 52

Attorney Laucella and Attorney Dowdle met with Judge Sletvold in a private conference, at which time she repeated her statements about Defendant Barlow to Judge Sletvold. SDMF ¶ 53 During this conference, Attorney Laucella feared Defendant Barlow would perjure himself in order to survive the suppression motion and/or eventually obtain a conviction or guilty plea. SDMF ¶ 54 Attorney Laucella was clearly upset that Defendant Barlow would perjure himself in order to survive the suppression motion and/or obtain a conviction or guilty plea rather than providing justice for Plaintiff. SDMF ¶ 55

In addressing the pending nolle pros/dismissal of all criminal charges against Plaintiff, Attorney Dowdle advised Judge Sletvold that, in nearly twenty-five years of practicing law, he had never witnessed a prosecuting attorney break down crying while condemning the integrity and honesty of a prosecuting officer. (SDMF ¶ 56) Subsequent to the conference with Judge

24

Sletvold,  Attorney Laucella contacted her supervisors at the Commonwealth of Pennsylvania,

Office of Attorney General and filed a formal nolle pros/ dismissal of all charges against

Plaintiff. (SDMF ¶ 57)

In his Memorandum of Law in support of his Motion for Summary Judgment, Defendant

Barlow argues that the Office of Attorney General's nolle prossing/dismissal of Plaintiff's case is

not sufficient to meet the termination requirement for malicious prosecution. This argument is

contrary the facts of the within matter and the law relating to the legal standard for deciding

summary judgment motions. Plaintiff has regularly and consistently maintained that he believed

that he was dealing with an older woman during his communications with Defendant Barlow.

Plaintiff repeated this assertion in police headquarters while being interviewed by Defendant

Barlow. Whether or not Defendant Barlow believed Plaintiff is factually and legally irrelevant.

Moreover, Plaintiff, as the non-moving party in a summary judgment action is entitled to the

benefit of all presumptions and legal inferences.

Our Third Circuit courts have held that a court may not consider the credibility or weight

of the evidence in deciding a motion for summary judgment, even if the quantity of the moving

party's evidence outweighs that of its opponent. *Big Apple BMW, Inc. v. BMW of North America,*

*Inc.* 974 F.2d 1358, 1363 (3d Cir. 1992). Rather, it remains the "provence of the factfinder to

ascertain the believability and weight of the evidence." *Id.* Our courts have further held that, for

purposes of considering a motion for summary judgment, the court "should not consider the

record solely in piecemeal fashion, giving credence to innocent explanations for individual

strands of evidence, [because] a jury ... would be entitled to view the evidence as a whole."

*Abramson v. William Patterson College of New Jersey*, 260 F.3d 265, 285 (3d Cir. 2001) (citing

25

*Hawley v. Town of Stratford*, 217 F.3d 141, 151(2d Cir. 2000)).

Accordingly, it is respectfully submitted that in viewing the above facts in the light most favorable to the non-moving party Plaintiff, a factfinder could reasonably conclude that Defendant Barlow acted with malice against Plaintiff for a purpose other than bringing Plaintiff to justice. A factfinder could further reasonably conclude that Defendant Barlow as the prosecuting officer, initiated the criminal proceedings without probable cause, that the criminal proceeding ended in Plaintiff's favor and that Plaintiff suffered a deprivation of his liberty consistent with the concept of seizure as a consequence of the legal proceeding. As such, Defendant Barlow's Motion For Summary Judgment as to Plaintiff's federal and state claims for malicious prosecution should be dismissed by this Honorable Court.

## C.    DEFENDANT BARLOW IS NOT ENTITLED TO QUALIFIED IMMUNITY FOR SUBJECTING PLAINTIFF TO FALSE ARREST AND FALSE IMPRISONMENT.

In accordance with the applicable case law cited herein and in Plaintiff's Brief In Opposition to The Bethlehem Defendants' Motion For Summary Judgment, Defendant Barlow is not entitled to qualified immunity regarding Plaintiff's Fourth Amendment claim of false arrest and false imprisonment. Such immunity is available to shield government officials from "civil liability in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether officials are entitled to qualified immunity, a court must determine whether the Plaintiff has alleged facts making out a violation of a constitutional right. The court must further determine whether the right at issue was clearly established at the time of Defendants alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) citing *Saucier v.*

26

*Katz,* 533 U.S. 194, 201 (2001). Our courts have continually mandated that if a right violated by

a public official was clearly established, then said official is not entitled to a defense of qualified

immunity. *Reilly v. City of Atlantic City,* 532 F.3d 216, 223-224 (2008) In the within matter,

Plaintiff's Fourth Amendment right to be free from an unreasonable search and seizure, false

arrest and false imprisonment was clearly established.

In *Burns v. County of Cambria, PA,* the Third Circuit Court of Appeals reviewed the

clearly established standards governing the right of qualified immunity from suit and stated:

> The contours of the right must be sufficiently clear that a
> reasonable official would understand that what he is doing
> violates that right. This is not to say that an official action is
> protected by qualified immunity unless the very action in
> question has previously been held unlawful, but it is to say
> that in light of pre-existing law the unlawfulness must be
> apparent...This Court has 'adopted a broad view of what
> constitutes an established right of which a reasonable person
> would have known'... We held that there does not have 'precise
> factual correspondence' between the case at issue and a
> previous case in order for a right to be 'clearly established',
> and we would not be 'faithful to the purposes of immunity by
> permitting...officials one liability-free violation of a constitutional
> or statutory requirement.' *Burns v. County of Cambria, PA,* 971 F.2d
> 1015, 1024 (3d Cir. 1992)

After reviewing the facts of the *Burns* case, which involved the demotion of

deputy sheriffs for their political associations, the Court cited applicable case law on

this issue and stated:

> we cannot, in good conscience, conclude that in 1982 a
> reasonably active politician would not have believed that it
> would be impermissible to demote an employee in retaliation
> for his political speech and/or associations...[A]s of 1992 the
> law was 'clearly established' that a public employee could not
> be demoted for exercising his rights under the first amendment.
> One could hardly contend that the rule was otherwise as to

27

> dismissals. *Burns v. County of Cambria, PA*, 971 F.2d 1015, 1024 (3d Cir. 1992).

As a result, the Court concluded that the defendant was not entitled to qualified immunity.

A determination of the issue of whether the Defendant's action in subjecting Plaintiff to a false arrest and false imprisonment were proper and lawful turns on motivation. When confronting a claim of qualified immunity that is usually premised upon factual disputes regarding motivation, the court must be mindful that, "*although qualified immunity is a question of law determined by the court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury.*" *Bartos v. Pennsylvania Department of Environmental Protection*, 2011 WL 2456613 at *23 (quoting *Johnson v. Jones*, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed. 2d 238 (1995)); see *Karnes v. Skrutski*, 62 F.3d 485, 491 (3d Cir. 1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury decides disputed factual issues relevant to this determination.") Hence, Defendants' assertion of qualified immunity is more properly an issue of fact that must be decided by a jury.

In sum, government officials reasonably apprised of the law and acting in good faith would, if acting as plaintiff alleges, have had fair warning that their conduct was unconstitutional. Moreover, Defendant Barlow's motive for requesting that Defendants Leaser and Heuser stop Plaintiff's vehicle, handcuff Plaintiff, place Plaintiff in the rear seat of a police vehicle, transport Plaintiff to Bethlehem Police Headquarters, continue to detain Plaintiff at police headquarters and transport Plaintiff to the Northampton County Prison must be decided by a jury. Likewise, Defendant Barlow's motive for illegally searching Plaintiff's vehicle, illegal searching Plaintiff's phone, demanding that Plaintiff provide the numbers to unlock his phone,

28

arresting Plaintiff on formal criminal charges and giving perjured, false testimony under oath at the preliminary hearing must be decided by a jury.

In the case at bar, Plaintiff's constitutional right to be free from an unreasonable search and seizure and to be free from a false arrest and a false imprisonment was clearly established rights and was known to Defendant Barlow. Plaintiff's Fourth Amendment rights were clearly established and Defendant Barlow, as a trained law enforcement official sworn to uphold the law, would not have believed that it is permissible to stop and search a citizen without probable cause or without reasonable suspicion that criminal activity was afoot and thereby subject a citizen to a false arrest and false imprisonment. Defendant Barlow would not have believed that it is permissible to violate Plaintiff's rights under the Fourth Amendment of the United States Constitution to be free from false arrest, false imprisonment, malicious prosecution and illegal searches and seizures without a warrant or probable cause, including the search of Plaintiff's automobile and cellular phone. As a trained police officer, Defendant Barlow would further not have believed that it is permissible to utilize the fruits of illegal search and seizure in order to arrest Plaintiff on formal charges and incarcerate Plaintiff for four days in the Northampton County Prison.

Accordingly, it is respectfully submitted that Defendant Barlow is not entitled to qualified immunity from suit in the within matter and Defendant Barlow's Motion For Summary Judgment in this regard, should be denied by this Honorable Court.

## V. CONCLUSION

For the reasons set forth above, it is respectfully submitted that this Honorable Court should deny Defendant Barlow's Motion For Summary Judgment under Federal Rule of Civil

29

Procedure 56(b) as to Count I - False Arrest, Count II - False Imprisonment, Count III Malicious

Prosecution, Count VIII Supplemental State Claims - False Arrest and False Imprisonment and

Count IX - Supplemental State Claim Malicious Prosecution.

Respectfully submitted,

Date: <u>January 19, 2021</u>                  _/s/Fredrick E. Charles_ _____
                                    Fredrick E. Charles, Esquire
                                    Attorney for Plaintiff
                                    Attorney I.D.: 25691
                                    441 Linden Street
                                    Allentown, PA 18102
                                    (610) 437-7064

## CERTIFICATE OF SERVICE

I, Fredrick E. Charles, Esquire, counsel for Plaintiff Robert Andrew Saultz, hereby

certify that on January 19, 2021, I served a true and correct copy of the Plaintiff's Brief in

Opposition to Defendant Eric J. Barlow's Motion for Summary Judgment upon Counsel for the

Defendants

Via electronic mail to:

Kathy A. Le, Esquire
Deputy Attorney General
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Attorney for Defendant
Special Agent Eric J. Barlow
kle@attorneygeneral.gov

David J. MacMain, Esquire
Janelle E. Fulton, Esquire
Attorneys for Defendant City of
Bethlehem, Mayor Robert Donchez,
Chief of Police Mark DiLuzio,
Sergeant Michael Leaser, Officer
and Officer/Sergeant John Doe
33 W. Market Street
West Chester, PA 19382
dmacmain@macmainlaw.com


Date: January 19, 2021

/s/Fredrick E. Charles
Fredrick E. Charles, Esquire
Attorney for Plaintiff
Attorney ID# 25691
441 Linden Street
Allentown, PA 18102
thecharleslawoffice@gmail.com

31