**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT ANDREW SAULTZ, | : | |
| **Plaintiff** | : | **NO. 19-cv-05778-JMY** |
| **vs.** | : | |
| | : | **CIVIL ACTION** |
| COMMONWEALTH OF PENNSYLVANIA | : | |
| OFFICE OF ATTORNEY GENERAL, JOSH | : | |
| SHAPIRO ATTORNEY GENERAL, ET AL, | : | **JURY TRIAL DEMANDED** |
| **Defendants** | : | |

## PLAINTIFF'S PRETRIAL MEMORANDUM

**I.       NATURE OF THE ACTION AND JURISDICTION**

The within action is brought by Plaintiff Robert Andrew Saultz (hereinafter "Plaintiff")

against Special Agent Eric J. Barlow of the Commonwealth of Pennsylvania, Office of the

Attorney General (hereinafter "Defendant Barlow"), Sergeant Michael Leaser of the City of

Bethlehem Police Department (hereinafter "Defendant Leaser") and Officer Dawn Heuser of the

City of Bethlehem Police Department (hereinafter "Defendant Heuser"). This is an action for

injuries, damages and injunctive relief authorized by and/or arising under 42 U.S.C. 1983 and the

Fourth and Fourteenth Amendments to the Constitution of the United States of America. Plaintiff

seeks damages for civil rights violations, including False Arrest (Count I), False Imprisonment

(Count II), Malicious Prosecution (Count III), and supplemental state claims for False Arrest and

False Imprisonment (Count VIII) and for Malicious Prosecution (Count IX). Plaintiff seeks

damages for civil rights violations against Defendants Leaser and Heuser for False Arrest (Count

I), False Imprisonment (Count II), and supplemental state claims - False Arrest and False

Imprisonment (Count VIII). The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§

1

1331 and 1343 (1), (3) and (4). State claims are brought pursuant to this Honorable Court's

supplemental jurisdiction under 28 U.S.C. § 1367(a). The matter in controversy exceeds,

exclusive of interest and costs, the sum of One Hundred Fifty Thousand ($150,000.00) Dollars.

All conditions precedent to jurisdiction have occurred or been complied with and venue is proper

in the Eastern District of Pennsylvania.

## II.     STATEMENT OF THE FACTS

### Plaintiff's Role Playing - Adults on Craigslist

Prior to December 9, 2017, on more than one occasion, Plaintiff utilized the Craigslist

application on his cell phone in order to engage in role playing with other individuals. Plaintiff

never met personally with any of the individuals with whom he corresponded and role played

on Craigslist. Craigslist required its clients to be eighteen years of age or older. Prior to and on

December 9, 2017, Plaintiff corresponded with individuals on Craigslist because it gave Plaintiff

a feeling of being needed. At no time did Plaintiff meet personally with or attempt to have sex

with any minor child or any of the individuals with whom he had corresponded on Craigslist.

### Psychological Evaluation & Sexual Risk Assessment - Frank M. Dattilio, Ph.D.

Plaintiff underwent a psychological evaluation and sexual risk assessment performed by

clinical and forensic psychologist Frank M. Dattilio, Ph.D. According to Dr. Dattilio, "there is

no indication that Mr. Saultz has skyped or engaged in any other type of webcam sexual activity

with underage females or anyone else for that matter. He has no history of illegal sexual activity

or illegal behaviors otherwise and has for the most part led a fairly decent law-abiding life". Dr.

Dattilio further determined "it is therefore my opinion to a reasonable degree of psychological

2

certainty that while Mr. Saultz does have some serious issues with regard to his need for affection and intimacy, he does not possess the internal drive to seek out minors for sexual gratification."

### Role Playing Terms

In his communications on December 9, 2017, Plaintiff used the terms "princess," "little" and "daddy," which was terminology used by individuals who engaged in role playing on Craigslist and referred to as "daddy-little" role playing. Plaintiff's use of these "daddy-little" terms would have alerted the person with whom he was communicating that Plaintiff was involved in role playing. Defendant Barlow, at the time that he was communicating with Plaintiff, should have been aware of Plaintiff's prior communications with representatives of the Attorney General's Office, including Plaintiff's communications with the "wild child" ad, which required participants to be eighteen (18) years of age or older. Plaintiff 's referring to himself as "daddy" while communicating through the Craigslist "wild child" ad, as well as Plaintiff's communications to other Attorney General operatives, should have alerted Defendant Barlow that   Plaintiff was participating in "daddy-little" role playing.

### Plaintiff's Communications - Older Woman

Plaintiff regularly and consistently maintained that he believed he was dealing with an older woman during his communications with Defendant Barlow. Plaintiff repeated this assertion in police headquarters while being interviewed by Defendant Barlow. Defendant Barlow acknowledged that Plaintiff had communicated with another agent of the Attorney General's office that he believed the person he was transmitting with to be eighteen years of age or older. Defendant Barlow further acknowledged that pursuant to his experience as a police officer, he

3

was aware of the existence of groups that engaged in role playing on Craigslist or over the internet. Defendant Barlow further acknowledged that Plaintiff had maintained that he believed that he was engaged in role playing with an older woman over eighteen years of age.

### Incident - December 9, 2017

Prior to December 9, 2017, Plaintiff exchanged messages with the "wild child ad" on Craigslist which, according to Craigslist rules, involved interaction and/or role playing among adults over eighteen (18) years of age. Prior to and on December 9, 2017, Plaintiff made it clear with the individuals with whom he corresponded, including agents of the Attorney General's Office, that because Craigslist requires its clients to be eighteen (18) years of age or older, Plaintiff assumed he was corresponding with somebody of the majority age. On the evening of December 9, 2017, after leaving his place of employment, Plaintiff communicated with an individual, through Craigslist, who purported to be a fourteen (14) year old girl and who was, in fact, Defendant Barlow. Plaintiff was not aware that the person with whom he was communicating with was a Special Agent for the Commonwealth of Pennsylvania, Office of Attorney General, however Plaintiff did believe that said individual was an adult woman who was engaging in role playing with Plaintiff.

Defendant Barlow's electronic communications with Plaintiff failed to provide any identifiers as to whether the individual he was communicating with was male or female. Said transmissions failed to address the race of said individual nor did Defendant Barlow have a photograph of said individual. Defendant Barlow could not determine the exact location of the other party during said transmissions nor did he have proof as to whether the other party was transmitting from the states of New Jersey, Pennsylvania or any other state. Defendant Barlow

had no identifiable information as to the exact year of the vehicle being operated by the transmitting party nor whether said party was in a vehicle at the time he was transmitting. Defendant Barlow had no information as to whether the vehicle allegedly being operated by the transmitting party had New Jersey license plates nor did Defendant Barlow have the license plate number of the transmitting party. Defendant Barlow had no information as to whether the transmitting party's vehicle had been taken to a car wash and a "clean" vehicle was not an identifier concerning the transmitting party. Defendant Barlow was unable to determine the age of the individual with whom he was transmitting or whether one or more individuals were in the transmitting party's vehicle. Defendant Barlow's only identifier was that the transmitting party was in a white SUV, possibly a Chrysler Aspen. Defendant Barlow had no way of confirming, however, that the transmitting party was actually in a white Chrysler Aspen.

### Observation from a Distance of One Hundred Yards

Defendant Barlow testified that from the door of the Hyatt Hotel, he saw an Aspen located approximately one hundred yards away from the hotel entrance. He further indicated that from a distance of one hundred yards, at night, he was able to determine that the Aspen had New Jersey license plates, solely by the color of the plates. Defendant Barlow was unable to ascertain any additional identifiable factors linking the Aspen to his earlier electronic transmissions. Notwithstanding the lack of any identifiers beyond the make and model of the vehicle and color of the license plate, Defendant Barlow instructed Defendants Leaser and Heuser to stop the aforesaid vehicle.

### Defendants Leaser and Heuser

Prior to December 9, 2017, Defendant Leaser had never met or worked with Defendant

Barlow. On December 9, 2017, Defendant Barlow provided limited information to Defendant Leaser concerning Plaintiff. Defendant Barlow advised Defendants Leaser and Heuser that he was looking for a white SUV, possibly a Chrysler Aspen coming from the State of New Jersey. Defendant Barlow did not give Defendants Leaser or Heuser any additional information or identifying factors involving Plaintiff. Defendant Barlow did not have a photograph of Plaintiff nor did he have a license registration concerning Plaintiff's vehicle. Defendant Barlow did not specify any factors to conclude that Plaintiff was a male or female other than what was written in the transmissions nor was he able to identify how many people were in Plaintiff's vehicle. Defendant Barlow further was unable to provide any information concerning Plaintiff's residence status nor was he able to identify Plaintiff's license plate number or whether Plaintiff's vehicle had a New Jersey license plate. Defendant Barlow never advised Defendants Leaser or Heuser that a clean vehicle was an identifier for Plaintiff's vehicle.

### Stop of Plaintiff's Vehicle - Defendants Leaser and Heuser

On December 10, 2017, Defendant Heuser initially stopped Plaintiff's vehicle and was immediately joined by Defendant Leaser, who was in a separate vehicle. Defendants Leaser and Heuser were immediately joined at the scene of the stop of Plaintiff's vehicle by Officer Corey McFadden and acting lieutenant Kromer in their separate vehicles. As a result, Plaintiff's vehicle was surrounded by as many as four Bethlehem Police vehicles, with two or more vehicles having their lights flashing. At the time of the initial stop, Defendant Leaser believed that Plaintiff may be a flight risk because he appeared to be nervous. Plaintiff's "nervousness" was the **only** reason Defendant Leaser believed Plaintiff to be a flight risk. Defendant Leaser then engaged in a "ruse" and gave Plaintiff a false reason for being stopped. Once Defendant Leaser gave Plaintiff a false reason for stopping his vehicle, Plaintiff's nervousness completely disappeared while sitting

in his vehicle.  Upon hearing Defendant Leaser's "ruse," Plaintiff looked to be relieved and a little

calmer as he leaned back in his seat. Defendant Leaser's providing Plaintiff with a false

reason/"ruse" for stopping his vehicle resulted in Plaintiff becoming more relaxed and eliminated

the risk of Plaintiff's becoming a flight risk.

After Plaintiff had relaxed while in his vehicle, Defendant Leaser ordered Plaintiff to exit

his vehicle. Defendant Leaser spoke with Plaintiff while Plaintiff was sitting in his vehicle,

ordered Plaintiff to exit his vehicle and immediately handcuffed Plaintiff upon his exit from his

vehicle. Less than sixty seconds had elapsed from the time Defendant Leaser spoke to Plaintiff

while he was in his vehicle until Defendant Leaser handcuffed Plaintiff immediately outside of

his vehicle. At the time he was handcuffed Plaintiff was surrounded by four Bethlehem Police

officers and four Bethlehem police vehicles, with at least two vehicles having their lights flashing.

Plaintiff was handcuffed by Defendant Leaser and placed in the backseat of Defendant Heuser's

vehicle. Plaintiff remained in handcuffs for approximately nineteen minutes from the time of the

initial stop until he was transported to the Bethlehem Police Headquarters.

### **Defendant Barlow's Warrantless Search - Plaintiff's Vehicle and Cellular Phone**

After directing Defendants Leaser and Heuser to stop Plaintiff's vehicle, Defendant

Barlow arrived at the scene of the stop and viewed Plaintiff being detained in the rear seat of a

Bethlehem police vehicle. After speaking with Defendant Leaser, Defendant Barlow conducted a

warrantless search of Plaintiff's vehicle. Defendant Barlow seized Plaintiff's cellular phone,

which was on the front seat of his vehicle and attempted to manipulate the phone.

On December 10, 2017, Plaintiff owned a Droid Turbo X cellular phone which locked after two minutes of non-use. Defendant Barlow's last message to Plaintiff's phone was made approximately fifteen minutes prior to Defendant Barlow's seizing Plaintiff's phone from Plaintiff's vehicle at the scene of the stop. As a result, it was physically impossible for Defendant Barlow to view his past messages to Plaintiff's phone or any message that was sent more than two minutes prior to his seizing Plaintiff's phone.

Defendant Barlow subsequently ordered Defendants Leaser and Heuser to transport Plaintiff to Bethlehem Police Headquarters. While Plaintiff was handcuffed in the Bethlehem Police Headquarters, Defendant Barlow hovered over Plaintiff in a threatening manner, yelled at Plaintiff and demanded that Plaintiff give Defendant Barlow the passcode to unlock Plaintiff's cellular phone so Defendant Barlow could retrieve any messages for the first time. At the time Defendant Barlow hovered over Plaintiff and ordered Plaintiff to give up his passcode, Plaintiff remained handcuffed while sitting in a chair in police headquarters. After being intimidated by Defendant Barlow, Plaintiff gave up his passcode, however, Plaintiff never signed a valid consent form or authorization prior to being forced to give Defendant Barlow his cellular phone passcode.

### Prosecution of Plaintiff - Formal Criminal Charges

After conducting a search of Plaintiff's cellular phone at police headquarters, Defendant Barlow filed formal criminal charges against Plaintiff, including Unlawful Contact with Minor - Sexual Offenses, Criminal Attempt - IDI Person Less Than Sixteen Years of Age and Criminal Use of Communication Facility. Bail was set at Two Hundred Thousand ($ 200,000.00) Dollars and Plaintiff was transported to and incarcerated in the Northampton County Prison for a period of four days, during which time he suffered from severe medical issues.

8

A Preliminary Hearing on the criminal charges was scheduled before Magistrate Judge Roy A. Manwaring, II and, on behalf of the Commonwealth, was attended by Defendant Barlow and Attorney Michelle Laucella, (hereinafter "Attorney Laucella"), the prosecuting attorney from the Office of the Attorney General. Prior to the Preliminary Hearing, Defendant Barlow added an additional charge of Criminal Attempt - Statutory Sexual Assault: Eleven Years of Age or Older to the charges previously filed against Plaintiff. During the Preliminary Hearing, in response to direct questioning by Attorney Laucella, Defendant Barlow testified as to the circumstances surrounding Plaintiff's arrest and the search of Plaintiff's vehicle and cellular phone. As a result of Defendant Barlow's testimony, the criminal charges against Plaintiff were bound over for court.

### Defense Attorney - Eric K. Dowdle, Esquire

Prior to the aforesaid Preliminary Hearing, Plaintiff retained the legal services of criminal defense attorney Eric K. Dowdle, Esquire (hereinafter "Attorney Dowdle"). Attorney Dowdle represented Plaintiff at the aforesaid Preliminary Hearing and subsequently filed an Amended Omnibus Pretrial Motion which included Motions to Suppress Defendant Barlow's search of Plaintiff's vehicle and cellular phone, Defendant Barlow's arrest of Plaintiff and a Motion to Compel Discovery. The criminal case against Plaintiff was assigned to the Honorable Jennifer V. Sletvold (hereinafter "Judge Sletvold"), Judge of the Court of Common Pleas of Northampton County.

Prior to a scheduled hearing on the Omnibus Pretrial Motions, Attorney Dowdle met privately with Attorney Laucella, at which time Attorney Laucella broke down crying. Attorney Laucella advised Attorney Dowdle that she did not trust Defendant Barlow to be truthful in his

court testimony concerning his arrest of Plaintiff. She further advised Attorney Dowdle that she believed Defendant Barlow was going to perjure himself by giving false testimony under oath concerning his search of Plaintiff's vehicle and his search of Plaintiff's cell phone. Attorney Laucella further advised Attorney Dowdle that Defendant Barlow knew better than to do what he did in searching Plaintiff's vehicle and cell phone prior to arresting Plaintiff. She further believed that Defendant Barlow would commit perjury by making false statements under oath and would say anything in order to have his case survive Attorney Dowdle's suppression motion. Attorney Laucella advised Attorney Dowdle that in order to prevent Defendant Barlow from committing perjury and/or making false statements under oath to survive the suppression motion, she was going to call her supervisors and request that the case against Plaintiff be nolle prossed/dismissed.

## <u>Meeting with Judge Sletvold</u>

Attorney Laucella and Attorney Dowdle met with Judge Sletvold in a private conference, wherein Attorney Laucella repeated her prior statements about Defendant Barlow to Judge Sletvold. During this conference, Attorney Laucella was clearly upset and feared that Defendant Barlow would perjure himself in order to survive the suppression motion and/or obtain a conviction or guilty plea, rather than provide justice for Plaintiff. During said conference, Attorney Dowdle advised Judge Sletvold that in nearly twenty-five years of practicing law, he had never witnessed a prosecuting attorney break down crying while condemning the lack of integrity and honesty of a prosecuting officer. Attorney Laucella subsequently filed a formal nolle prosse/dismissal of all charges against Plaintiff, which was formally approved by the Court.

III.     **MONETARY DAMAGES**

Plaintiff seeks monetary damages for emotional distress, pain and suffering and for

the loss of past and future earnings. The range of Plaintiff's total loss of past and future earnings,

reduced to present value, as determined by Plaintiff's expert economist, Andrew C. Verzilli,

M.A.B., Verzilli Consulting Group, Inc., includes the following:

| | |
|---|---|
| Past-Lost Earnings | $ 121,159 to $ 183,601 |
| Future Loss | $ 337,220 to $ 938,906 |
| **Total Loss in Earning Capacity** | **$ 438,379 to $ 1,122,507** |

There has been no formal computation of damages for Plaintiff's claims for emotional distress,

pain and suffering.

IV.     **WITNESSES**

    A.     **ROBERT ANDREW SAULTZ - (LIABILITY AND DAMAGES)**
        1016 Hill Street
        Phillipsburg, NJ 08865

Plaintiff Robert Andrew Saultz will testify consistent with his prior sworn testimony and

with the facts outlined above. A short summary of the substance of Plaintiff's testimony includes

that prior to and on December 9, 2017, Plaintiff engaged in role playing on Craigslist and that

Craigslist mandated that individuals utilizing its service be eighteen years of age or older. On

December 9, 2017, Plaintiff advised an agent of the Pennsylvania Attorney General's Office that,

because they were utilizing the Craigslist ad, he assumed said individual with whom he was

transmitting was eighteen years of age or older. Plaintiff subsequently engaged in electronic

transmissions utilizing the Craigslist "wild child ad" with Defendant Barlow, who posed as a

fourteen year old girl. Plaintiff will testify that he utilized the terms "princess," "little" and "daddy" as terminology used in the "daddy-little" role playing ascribed to by individuals using the Craigslist ad. Plaintiff will testify that he believed he was transmitting with an older woman and as a result, he felt like he was cheating on his wife. Plaintiff will testify that he has never met with or had sexual relations with any minor. Prior to meeting with the individual he believed to be an older woman, Plaintiff had a change of heart and decided to go home to his residence in Phillipsburg, New Jersey.

On his way home, Plaintiff was initially stopped by Defendants Leaser and Heuser, ordered out of his vehicle, handcuffed and placed in the rear seat of Defendant Heuser's vehicle. Plaintiff witnessed Defendant Barlow arrive at the scene of the stop, conduct a warrantless search of Plaintiff's vehicle and attempt to manipulate and search Plaintiff's cellular phone. On said date, Plaintiff owned a Droid Turbo X cellular phone which employed a two-minute locking mechanism, which automatically locked the phone after two minutes of non-use. At the time that Defendant Barlow manipulated Plaintiff's cell phone, said phone had not received any messages for a minimum period of fifteen minutes and as a result, it was impossible for Defendant Barlow to view or retrieve any of Plaintiff's messages, including any messages sent by Defendant Barlow. Plaintiff remained handcuffed from the time he exited his vehicle until he was transported to the Bethlehem Police Headquarters, a period of approximately nineteen minutes. Plaintiff remained handcuffed while seated on a chair at police headquarters.

Defendant Barlow was unable to retrieve any messages from Plaintiff's cell phone and as a result, he hovered over Plaintiff at police headquarters, yelled at Plaintiff and ordered Plaintiff to provide him with the passcode to his telephone. Plaintiff felt frightened and intimidated by

Defendant Barlow's actions and while handcuffed, Plaintiff verbally gave Defendant Barlow his telephone passcode. Plaintiff will testify that he never voluntarily consented to a search of his phone nor did he sign a consent form prior to providing Defendant Barlow with his passcode. Subsequent to his search of Plaintiff's telephone, Defendant Barlow filed formal criminal charges against Plaintiff. Plaintiff was present at the Preliminary Hearing scheduled before Roy A. Manwaring, II and personally observed Defendant Barlow's testimony at the Preliminary Hearing.

Plaintiff will further testify that as a result of the criminal charges filed by Defendant Barlow, he was arrested and incarcerated in the Northampton County Prison for a period of four days, during which period he suffered from medical problems resulting from delays in his obtaining proper medication for his medical condition. Plaintiff will further testify that as a result of the filing of the aforesaid criminal charges by Defendant Barlow, Plaintiff lost his employment with Home Depot and further suffered the loss of past and future earnings as more fully described in the report of Andrew C. Verzilli, M.B.A.

    **B.**    **MRS. JOANNE SAULTZ - (DAMAGES)**
        1016 Hill Street
        Phillipsburg, NJ 08865

Plaintiff's wife, Mrs. Joanne Saultz (hereinafter "Mrs. Saultz"), will testify concerning her observation of the emotional distress, embarrassment, humiliation, feeling of worthlessness and loss of sleep suffered by Plaintiff as a result of his arrest by Defendants Leaser, Heuser and Barlow. Mrs. Saultz will further testify as to the financial hardship suffered by her family as a result of Plaintiff's arrest and to the substance of the counseling and treatment that she underwent with Plaintiff during the period from December 2017 through February 2018.

C.    **ERIC K. DOWDLE, ESQUIRE - (LIABILITY)**
      333 Union Street
      Allentown, PA 18102

Attorney Dowdle will testify as to all aspects of his legal representation of Plaintiff on the criminal charges brought by Defendant Barlow. Attorney Dowdle will testify as to what he observed during Attorney Laucella's questioning of Defendant Barlow and the testimony offered by Defendant Barlow at the Preliminary Hearing. Attorney Dowdle will further testify as to the underlying reasons supporting his filing of an Amended Omnibus Pretrial Motion and to his interaction with Attorney Laucella and Defendant Barlow during their prosecution of the criminal charges against Plaintiff. Attorney Dowdle will further testify as to his interaction with Attorney Laucella prior to a scheduled hearing on his pretrial motions.

Attorney Dowdle will testify that he met privately with Attorney Laucella prior to a scheduled meeting on his Omnibus Pretrial Motions at which time Attorney Laucella broke down crying and advised Attorney Dowdle that she did not trust Defendant Barlow to be truthful in his court testimony concerning his arrest of Plaintiff. Attorney Dowdle will further testify that Attorney Laucella advised him that she believed Defendant Barlow would perjure himself by giving false testimony under oath concerning his search of Plaintiff's vehicle and the search of Plaintiff's cellular phone. Attorney Dowdle will further testify that Attorney Laucella advised him that she believed Defendant Barlow would perjure himself by making a false statement under oath and say anything to have his case survive Attorney Dowdle's suppression motion.

Attorney Dowdle will further testify that Attorney Laucella advised him that in order to prevent Defendant Barlow from committing perjury and/or making false statements under oath in order to survive the suppression motion, she was going to call her supervisors and request that the case against Plaintiff be nolle prossed/dismissed.

14

Attorney Dowdle will testify that he and Attorney Laucella met with Judge Sletvold in a private conference, at which time Attorney Laucella repeated her statements about Defendant Barlow to Judge Sletvold, including that she feared that Defendant Barlow would perjure himself in order to survive the suppression motion and obtain a conviction or guilty plea, rather than provide justice for Plaintiff. Attorney Dowdle will further testify as to his observation that Attorney Laucella was clearly upset by the prospect that Defendant Barlow would commit perjury and offer false statements under oath in order to survive the suppression motion and obtain a conviction or guilty plea, rather than provide justice for Plaintiff. Attorney Dowdle will further testify as to his conversation with Judge Sletvold, wherein he stated that in nearly twenty-five years of practicing law, including his time as a Lehigh County Assistant District Attorney, Northampton County Assistant District Attorney and as a defense attorney, he had never witnessed a prosecuting attorney break down crying while condemning/attacking the lack of integrity and honesty of a prosecuting police officer. Attorney Dowdle will further testify that Attorney Laucella nolle prosequie/dismissed the charges against Plaintiff in order to preclude Defendant Barlow from offering perjured/false testimony under oath at an Omnibus Pretrial/ Suppression Hearing and that the nolle prosequi was formally approved by the Court.

   D.   **HONORABLE JENNIFER R. SLETVOLD - (LIABILITY)**
        Northampton Court of Common Pleas
        Northampton County Government Center
        669 Washington Street
        Easton, PA 18042

   Judge Sletvold presided over the conference with Attorney Dowdle and Attorney Laucella prior to the scheduled hearing on Attorney Dowdle's Omnibus Pretrial Motions. Judge Sletvold

personally observed Attorney Laucella's emotional condition and was present for all of Attorney

Laucella's comments leading up to her contacting her supervisors and resulting in her filing a

formal nolle prosequi/dismissal of all criminal charges against Plaintiff. Judge Sletvold was

present for all statements made by Attorney Dowdle concerning the circumstances leading up to

and resulting in Attorney Laucella's filing a formal nolle prosequi/dismissal of all criminal

charges against Plaintiff. *(Please see "VII Special Comments" herein concerning any potential

testimony from Judge Sletvold).

     **E.**     **FRANK M. DATTILIO, Ph.D.**-**EXPERT/PSYCHOLOGIST**- (**LIABILITY**)
              1251 S. Cedar Crest Boulevard, (304-D)
              Allentown, PA 18103

As set forth above, at all times relevant to the within action, Plaintiff maintained that he

had utilized Craigslist in order to engage in role playing with individuals who, as per Craigslist

mandates, were eighteen years of age or older. Plaintiff further maintained that on December 9,

2017, he advised an agent of the Attorney General's Office with whom he was communicating

that, because they were utilizing the Craigslist "wild child" ad, he assumed that the individual

was eighteen years of age or older. Plaintiff has further steadfastly maintained that he had never

met with or engaged in sexual relations with a minor. During the criminal prosecution of

Plaintiff, Dr. Dattilio addressed the above claims and performed a Psychological Evaluation and

Sexual Risk Assessment of Plaintiff. Dr. Dattilio will testify that as a result of his evaluation of

Plaintiff and as specifically set forth in his report resulting therefrom, "there is no indication that

Mr. Saultz has skyped or engaged in any other type of webcam sexual activity with underage

females or anyone else for that matter. He has no history of illegal sexual activity or illegal

behaviors otherwise and has for the most part led a fairly decent law-abiding life." Dr. Dattilio

will further testify that it is his opinion "to a reasonable degree of psychological certainty that while Mr. Saultz does have some serious issues with regard to his need for affection and intimacy, he does not possess the internal drive to seek out minors for sexual gratification."

>   **F.    ANDREW C. VERZILLI, M.B.A. - EXPERT ECONOMIST - (DAMAGES)**
>   Verzilli Consulting Group,
>   Inc.411 N. Broad Street
>   Lansdale, PA 19446

Mr. Verzilli will testify as to the past and future monetary damages suffered by Plaintiff as a result of the above-described criminal charges. Mr. Verzilli will further testify consistent with his formal report outlining Plaintiff's past and future damages and as described in "III. Monetary Damages" above.

>   **G.    JANE TYLER WARD, Ph.D. THERAPIST - (DAMAGES)**
>   Cedar Crest College
>   Curtis Hall, 121
>   100 College Drive
>   Allentown, PA 18104

Dr. Ward will testify as to the substance of her counseling and treatment provided to Plaintiff and his wife during the period from December 2017 through February 2018. Dr. Ward will testify as to the emotional distress, embarrassment, humiliation, and feelings of worthlessness suffered by Plaintiff as a result of his arrest on the aforesaid charges. Dr. Ward will further testify as to the marital problems suffered by Plaintiff and his wife as a direct result of Plaintiff's being arrested on the aforesaid criminal charges. Dr. Ward will further testify as to the marital problems suffered by Plaintiff and his wife as a direct result of the financial hardship created by Plaintiff's loss of his employment with Home Depot.

## H.    OTHER - CROSS-EXAMINATION

In addition to calling the above witnesses and providing direct testimony, it is anticipated

that Plaintiff will conduct cross examination of the following individuals:

1)    **DEFENDANT ERIC J. BARLOW**
Office of the Attorney
GeneralChild Predator
Section Strawberry Square,
16th Floor Harrisburg, PA
17120

2)    **DEFENDANT SERGEANT MICHAEL LEASER**
Bethlehem Police
Department10 E. Church
Street Bethlehem, PA 18018

3)    **DEFENDANT DAWN HEUSER**
Bethlehem Police
Department10 E. Church
Street Bethlehem, PA l80l8

4)    **MICHELLE L. LAUCELLA, ESQUIRE**
Deputy Attorney General
Criminal Prosecutions Section
1000 Madison Avenue (Suite
310)
Norristown, PA 19403

## V.    SCHEDULE OF EXHIBITS

A.    Economic Loss Report by Andrew C. Verzilli, Ph.D.;

B.    Plaintiff's United States Earned Income Tax Returns, 2016, 2017, 2018, 2019
and 2020 (upon completion);

C.    Psychological Evaluation and Sexual Risk Evaluation report of Frank M. Dattilio,
Ph.D. dated March 23, 2018;

D.    Deposition of Plaintiff Robert Andrew Saultz;

E.    Affidavit of Plaintiff Robert Andrew Saultz;

F.      Deposition of Eric K. Dowdle, Esquire;

G.      Affidavit of Eric K. Dowdle, Esquire;

H.      Deposition of Defendant Sergeant Michael Leaser;

I.      Deposition of Defendant Eric J. Barlow;

J.      Deposition of Defendant Dawn Heuser;

K.      Deposition of Deputy Attorney General Michelle L. Laucella;

L.      Declaration of Deputy Attorney General Michelle L. Laucella;

M.      All City of Bethlehem Police dashcam videos;

N.      Police Criminal Complaint;

O.      Northampton County Commitment and Surety papers including Commitment, Release of Prisoner, Bail Bond, Bail Release Conditions, Surety Information Page and Certificate of Counter Indemnity and Premium, Affidavit of Surety and Bail Payment;

P.      Bethlehem Police Field Case Report - Officer Dawn Heuser;

Q.      Investigative Report Bethlehem Police Department prepared December 11, 2017;

R.      Office of the Attorney General Investigative Report dated December 11, 2017;

S.      The unredacted .bin file prepared by Deputy Attorney General Michelle L. Laucella;

T.      Miranda Warnings and Waiver of Rights;

U.      Transcript of Preliminary Hearing before Magistrate Roy A. Manwaring, II on Wednesday, January 31, 2018;

V.      Order of Court - Honorable Jennifer R. Sletvold dated April 25, 2018;

W.      Omnibus Pre-Trial Motion filed May 11, 2018;

X       Order of Court - Honorable Jennifer R. Sletvold dated May 17, 2018;

Y.      Amended Omnibus Pre-Trial Motion filed July 20, 2018;

19

Z.    Amended Criminal Information;

AA.    Court of Common Pleas of Northampton County - Criminal Docket;

BB.    Order of Court - Honorable Jennifer R. Sletvold dated August 27, 2018;

CC.    Nolle Prosequi/Order of Dismissal of all criminal charges;

DD.    Droid Turbo X cellular phone literature;

EE.    Social media reports/internet and local news articles;

FF.    Fee Engagement Letter from Frank M. Dattilio, Ph.D.

GG.    Fee Agreement between Plaintiff and Eric K. Dowdle, Esquire;

HH.    Fee Agreement between Plaintiff and Fredrick E. Charles, Esquire;

II.    Report - Pennsylvania State Police Central Repository;

JJ.    Investigative Report of Eric J. Barlow; and

KK.    Correspondence between Eric K. Dowdle, Esquire and Deputy Attorney General Michelle L. Laucella.

Plaintiff's Exhibit Binder/Schedule of Exhibits to be offered at trial will be filed in accordance with the deadline established by this Honorable Court.

## VI.    ESTIMATE OF NUMBER OF DAYS REQUIRED FOR TRIAL

3-5 days

## VII.    SPECIAL COMMENTS

### Judge Sletvold

Plaintiff has attempted to secure the testimony of Judge Sletvold during the course of discovery and prior to the filing of the within Pretrial Memorandum. Plaintiff's attempt to secure

Judge Sletvold's testimony has been blocked/denied by the representatives of the Administrative

Office of Pennsylvania Courts (hereinafter "AOPC"). Plaintiff has advised the AOPC

representatives of his request for Judge Sletvold to testify at the trial of the within matter,

specifically as to the reasons provided by Attorney Laucella to Judge Sletvold and Attorney

Dowdle for her nolle prosequi of all criminal charges against Plaintiff. Plaintiff has been advised

byAOPC representatives that they will formally reject or proceed to court to block any attempt to

subpoena Judge Sletvold to testify at the trial of the within matter. Plaintiff asserts that Judge

Sletvold's testimony is crucial in the within matter and seeks guidance from this Honorable Court

in this regard.

## **Agreement - Withdrawal of Claims**

In accordance with agreement between counsel, Plaintiff is pursuing the claims against

Defendant Barlow as set forth in his Complaint in Count I - False Arrest, Count II - False

Imprisonment, Count III - Malicious Prosecution, Count VIII - Supplemental State Claims - False

Arrest and False Imprisonment and Count IX - Supplemental Claim - Malicious Prosecution.

Plaintiff is pursuing the claims against Defendants Leaser and Heuser as set forth in his

Complaint Count I - False Arrest, Count II - False Imprisonment, Count VIII - Supplemental

State Claims - False Arrest and False Imprisonment. All other claims have been withdrawn, as

per agreement among Counsel.

Respectfully submitted,

*Fredrick E. Charles*

Fredrick E. Charles, Esquire
Attorney for Plaintiff
Attorney I.D. 25691
441 Linden Street
Allentown, PA 18102

21

## **CERTIFICATE OF SERVICE**

I, Fredrick E. Charles, Esquire, counsel for Plaintiff Robert Andrew Saultz, hereby

certify that on April 8, 2021, I served a true and correct copy of the Plaintiff's Pretrial

Memorandum upon Counsel for the Defendants

Via electronic mail to:

| | |
|---|---|
| Kathy A. Le, Esquire | David J. MacMain, Esquire |
| Deputy Attorney General | Janelle E. Fulton, Esquire |
| Office of Attorney General | Attorneys for Defendant City of |
| 1600 Arch Street, Suite 300 | Bethlehem, Mayor Robert Donchez, |
| Philadelphia, PA 19103 | Chief of Police Mark DiLuzio, |
| Attorney for Defendant | Sergeant Michael Leaser, Officer |
| Special Agent Eric J. Barlow | and Officer/Sergeant John Doe |
| kle@attorneygeneral.gov | 33 W. Market Street |
| | West Chester, PA 19382 |
| | dmacmain@macmainlaw.com |

/s/ *Fredrick E. Charles*

Date: April 8, 2021

Fredrick E. Charles, Esquire
Attorney for Plaintiff
Attorney ID# 25691
441 Linden Street
Allentown, PA 18102
thecharleslawoffice@gmail.com