## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT ANDREW SAULTZ,** | : | Case No.  19-cv-5778 -JMY |
| | : | |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| **ATTORNEY GENERL** | : | |
| **JOSH SHAPIRO, et al.** | : | |
| | : | |
| *Defendants* | : | |

### <u>MEMORANDUM</u>

**YOUNGE, J.**                                                   **DECEMBER 8, 2022**

Plaintiff Robert Andrew Saultz brought this civil rights action under 42 U.S.C. § 1983

and Pennsylvania state law against Defendants Sgt. Michael Leaser, Det. Dawn Heuser, and

Special Agent Eric Barlow for false arrest, false imprisonment, and malicious prosecution.[1] Now

pending before the Court are two Motions for Summary Judgment: 1) a motion filed by

Defendants Sgt. Michael Leaser and Det. Dawn Heuser (the "Bethlehem Defendants"); and 2) a

motion filed by Defendant Eric Barlow, a Special Agent with the Commonwealth of

Pennsylvania Office of Attorney General. (ECF Nos. 24 & 26.)  This matter is briefed, and the

Court is prepared to rule.  *See* Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth below, the

Court grants the Defendants' Motion.

---

[1] Plaintiff agreed to dismiss all claims against the Defendants the Office of Attorney General, Attorney General Josh Shapiro, City of Bethlehem, Mayor Robert Donchez, and former Police Chief Mark A. Diluzio. (ECF Nos. 19 & 34.). The parties also stipulated to dismiss all claims against Sgt. Leaser and Det. Heuser except for Plaintiff's federal and state law claims of false arrest and false imprisonment. (*Id.*) As to the claims against Special Agent Barlow, the Plaintiff agreed to dismiss all except his federal and state law claims for false arrest, false imprisonment, and malicious prosecution. (ECF No. 35.)

I.      **BACKGROUND**[2]

The facts in this case stem from Plaintiff's alleged sexually charged messages on Craigslist, an internet-based platform, with an individual purporting to be a fourteen (14) year old female who was in reality a law enforcement officer, Defendant Barlow, assigned to a sting operation designed to catch potential child predators.  In these messages, Plaintiff was asked by Defendant Barlow's 14-year-old persona "is daddy okay if im [sic] only 14?" (ECF No. 26 at 10.)  Nonetheless, Plaintiff claims he believed he was messaging an older woman pretending to be younger, and not a minor, in order to role-play and express each other's mutual sexual fantasies.  (ECF No. 31-1 at 4.)  In these communications, undercover law enforcement called Plaintiff "daddy" which Plaintiff states indicated to him that he was engaging in "daddy-role playing" though he never sought to clarify that he was communicating with a woman over 18 years of age. (ECF No. 26 at 16.)  On December 9, 2017, after numerous sexual messages initiated by Plaintiff, he arranged to meet the person he thought he was communicating with on Craigslist at the Hyatt Hotel in Bethlehem, Pennsylvania at around 12 a.m. (ECF No. 31-1 at 4; ECF No. 26 at 12.)

Plaintiff drove his vehicle approximately seventy (70) miles to meet at the Hyatt Hotel, but then claims that once he arrived, he decided that he no longer desired to meet and attempted to drive his vehicle away. (*Id*.)  Plaintiff had previously told Defendant Barlow's 14-year-old persona that he lived in New Jersey, and at 11:57 pm, while in route to the Hyatt Hotel, he stated that he "just crossed into PA." (ECF No. 26 at 12.)  After receiving this message Defendant Barlow stood outside the Hyatt Hotel and while outside, he observed a white Chrysler Aspen SUV with New Jersey license plates.  (*Id.*)  At 12:27 am, Plaintiff communicated "Im [sic] here

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

in the parking deck" and informed Defendant Barlow's persona that he was driving a Chrysler Aspen SUV.  (*Id.*)  Plaintiff also stated that he was "right by entrance," but then shortly after stopped responding to his messages.  (*Id.* at 13.)  Defendant Barlow, who believed Plaintiff may have "gotten spooked" by police cars and was still in the area, asked Defendant Leaser to help him locate and stop Plaintiff's vehicle.  (*Id.*)  One hundred feet from the entrance of the Hyatt hotel, Plaintiff was stopped by three police vehicles.  (ECF No. 31-1 at 5-6.)  His vehicle was approached by Defendant Hauser and Defendant Leaser, who advised Plaintiff that they were searching for a vehicle involved in an automobile accident.  Defendant Leaser ordered Plaintiff to exit his vehicle and handcuffed him after taking the keys from the ignition and Plaintiff's license and registration. (*Id.*at 7.)  When Defendant Barlow arrived at the stopped vehicle, he observed the same white Chrysler Aspen SUV he had seen earlier, and Plaintiff in the back of a police car. (*Id.* at 14.)  Defendant Barlow spoke to Defendant Leaser, who informed him that Plaintiff was handcuffed in the back of a police car, and that Plaintiff's cellphone was in the passenger seat of his car.  (*Id.*)  Defendant Barlow retrieved Plaintiff's cell phone from his car while Defendant Leaser observed, and as Defendant Barlow picked up the phone, the screen lit up displaying the last message Defendant Barlow sent to Plaintiff. (*Id.*) Once at the police station, Plaintiff was read his Miranda rights and admitted that he sent the messages in question, though claimed he believed he was communicating with an adult. (*Id.* at 16.)

Plaintiff was subsequently charged with the criminal offenses of: 1) Unlawful Contact With a Minor, under 18 Pa. C.S. § 6318(a)(1); (2) Criminal Attempt Involuntary Deviate Sexual Intercourse, under 18 Pa. C.S. §§ 901, 3123(a)(7); and (3) Criminal Use of a Communication Facility, under 18 Pa. C.S. § 7512.  (ECF No. 33 at 1-2.)  A preliminary hearing was held on January 31, 2018, at which time Plaintiff was also charged with Criminal Attempt and Statutory

Sexual Assault. (*Id.*)  All charges against Plaintiff were later dismissed pursuant to a *nolle pros* filed by Deputy Attorney General Michelle A. Laucella on behalf of the Commonwealth of Pennsylvania, Office of the Attorney General. (*Id.*)  On December 9, 2019 Plaintiff filed the present action. (ECF No. 1.)

## II.    LEGAL STANDARD

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The movant bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 264 F.3d 135, 145 (3d Cir. 2004).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party.  *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248).  A factual dispute is "material"

if it might well affect the outcome of the case under governing law.  *Id.* (citing *Anderson*, 477 U.S. at 248).

A court must view the facts and draw all reasonable inferences in the non-moving party's favor.  *See In re Flat Glass Antitrust Litig.*, 285 F.3d 350, 357 (3d Cir. 2004); *see also Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) ("In evaluating the evidence, we are required to view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion.") (internal quotation marks and citation omitted).  Nonetheless, a court need not credit "[u]nsupported assertions, conclusory allegations, or mere suspicions."  *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

## IV.    DISCUSSION

The gist of Plaintiff's claims is that the Defendants lacked probable cause to stop and arrest him, and therefore, he has sufficiently set forth claims under federal and Pennsylvania state law against the Defendants for false arrest, false imprisonment, and malicious prosecution. Plaintiff's claims are barred as a matter of law because the Defendants are entitled to immunity.

### A.    Plaintiff's Section 1983 Claims for False Arrest, False Imprisonment and Malicious Prosecution.

Plaintiff brings Section 1983 Fourth Amendment claims for false arrest and false imprisonment against Defendant Barlow, Defendant Leaser, and Defendant Heuser, with an additional claim for malicious prosecution against Defendant Barlow.  Constitutional claims for false arrest, false imprisonment, and malicious prosecution stem from the Fourth Amendment, which protects an individual's right to be free from unreasonable seizures and an arrest without probable cause.  *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 915 (2017) (holding that the Fourth Amendment permits malicious prosecution claims due to the right to be free from unreasonable seizures); *Fields v. City of Philadelphia*, 166 F. Supp. 3d 528, 540 (E.D. Pa. 2016) ("[a]

5

constitutional claim for malicious prosecution stems from the Fourth Amendment"); *Beck v. Ohio*, 379 I.S. 89. 91 (1964) (holding that the Fourth Amendment accords the right to protection from arrest without probable cause). [3]

To bring a Section 1983 claim for either false arrest or false imprisonment under the Fourth Amendment, a plaintiff must show: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted). To prove malicious prosecution under Section 1983, a plaintiff must show that: (1) The defendants initiated a criminal proceeding; (2) The criminal proceeding ended in plaintiff's favor; (3) The proceeding was initiated without probable cause; (4) The defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) The plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *DiFronzo v. Chiovero*, 406 Fed. Appx. 605, 608 (3d Cir. 2011) (citations omitted). Thus, all of Plaintiff's Section 1983 claims are predicated on whether his arrest was without probable cause. *Quinn v. Cintron,* No. 11–2471, 2013 U.S. Dist. LEXIS 143682, at *9 (E.D. Pa. Oct. 3, 2013) ("Claims of both false arrest and false imprisonment are predicated on an arrest made without probable cause in violation of the Fourth Amendment"); *see also Brockington v. City of Phila.,* 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005).

Plaintiff argues that Defendants lacked probable cause or reasonable suspicion to stop and arrest Plaintiff, as the Defendants, who were "aware that individuals do engage in role playing utilizing Craigslist," stopped him based on an alleged lack of "legitimate, probative

---

[3] Though Plaintiff's Complaint brings claims under both the Fourth and Fourteenth Amendment "when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate*." Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). Therefore, the court will grant summary judgment on the Plaintiff's claims to the extent they are brought under the Due Process Clause of the Fourteenth Amendment.

identifiers to link… [his] vehicle with… [the] electronic transmissions." (ECF No. 33 at 5, 11.) Plaintiff points to the Defendants' lack of information as to Plaintiff's physical attributes and license plate number prior to stopping and arresting him as showing a lack of probable cause or reasonable suspicion. (ECF No. 33 at 7.) Further, since Plaintiff was asked to exit his vehicle based on the make and model of his car using an alleged ruse, one-hundred feet from the Hyatt Hotel door, rather than in the parking garage as prearranged, Plaintiff argues he was subjected to an illegal stop and arrest. (*Id.* at 12.)

Even assuming, however, that the Defendants lacked probable cause to arrest Plaintiff, they are immune from Section 1983 liability under the doctrine of qualified immunity if their conduct does not violate "a clearly established right" as officers can "reasonably but mistakenly conclude that probable cause is present." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U. S. 635, 640, 641 (1987). "To resolve a claim of qualified immunity, [we] engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was clearly established at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (internal quotation marks omitted). We perform this inquiry "in the order we deem most appropriate for the particular case before us." *Santini v. Fuentes*, 795 F.3d 410, 418 (3d Cir. 2015) (citing P*earson v. Callahan*, 555 U.S. 223, 236 (2009)). Only "[i]f there are cases that would make it '*apparent*' to a reasonable officer in [the defendant's] position that **probable cause** was lacking, [is] **qualified immunity** ... not available." *Paff v. Kaltenbach*, 204 F.3d 425, 437 (3d Cir. 2000) (emphasis added).

Looking at the legal landscape, a reasonable officer could have interpreted the law as permitting Plaintiff's arrest considering his suspicious behavior. To determine whether an

officer had probable cause for an arrest, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U. S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U. S. 690, 696 (1996)); *see also United States v. Laville*, 480 F.3d 187, 194 (3d Cir.2007). Because probable cause "deals with probabilities and depends on the totality of the circumstances," *Maryland v. Pringle,* 540 U. S. 366, 371 (2003) it is "a fluid concept" that is "not readily, or even usefully, reduced to a neat set of legal rules," *Illinois v. Gates*, 462 U. S. 213, 232 (1983). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.*, at 243–244, n. 13 (1983). Probable cause "is not a high bar." *Kaley v. United States*, 571 U. S. 320 (2014).  Importantly, the constitutional validity of an arrest does not depend on whether the accused actually committed any crime or is later acquitted. *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir.2005).

There is no dispute that Plaintiff engaged in sexually charged communications with Defendant Barlow's 14-year-old persona and then acted on those conversations by driving seventy (70) miles to the Hyatt Hotel on December 9, 2017. Although Plaintiff states that he mistakenly thought he was messaging an older woman, this is contradicted by the fact that he had been told he was communicating with a 14-year-old and he made no attempt to clarify that he was, in fact, speaking to someone over 18 years old. But even if this Court were to accept this unsupported factual assertion as true, Plaintiff does not cite to any controlling case law holding that officers cannot infer a suspect's guilty state of mind based on his conduct alone, or that officers must accept a suspect's innocent explanations at face value. Nor does Plaintiff bring forth any authority, and we can find none, holding that probable cause to arrest is lacking when

an individual drives over an hour to meet a purported minor for sex and is observed at the agreed upon meeting site, in the correct car model after confirming his arrival.  Rather, Plaintiff simply states in a conclusionary manner that "[n]one of the circumstances in the existing case law which permits the use of handcuffs during a *Terry* stop is present in the within matter." (ECF No. 40 at 9.)  For that reason alone, Plaintiff's argument against immunity fails. *Vanderklok v. U.S.*, 774 Fed. Appx. 73, 77 (3d Cir. 2019) (failure to cite to case law was fatal to plaintiff's claim that the officer's were not entitled to qualified immunity when he alleged a lack of probable cause to arrest).

In this case, the Defendants made "common-sense conclusions about human behavior" to reasonably surmise that Plaintiff was engaging in criminal acts. *United States v. Cortez*, 449 U. S. 411, 418 (1981) (officers could pierce together information, including a general car make and common criminal behavior, to reasonably surmise that the particular vehicle they stopped was engaged in criminal activity). One of the crimes Plaintiff was ultimately charged with, Unlawful Contact With A Minor, exists if the defendant "is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth." 18 Pa. C.S. § 6318. For the charge against Plaintiff for Criminal Attempt at Involuntary Deviate Sexual Intercourse, Pennsylvania prohibits adults from having sexual relations with individuals less than 16 years of age, when there is a more than four-year age gap. 18 Pa. C.S. § 3123(a)(7).  Pennsylvania's criminal code defines criminal attempt as: "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa. C.S. § 901(a).

Plaintiff voluntarily engaged in conversation with Defendant Barlow rife with sexual content over the course of several hours, despite the representation that Plaintiff was speaking to a 14-year-old.  After those discussions, Plaintiff made plans to meet the purported 14-year-old at the Hyatt Hotel to have sexual relations and took substantial steps toward the commission of this crime by driving approximately 70 miles (1.5 hours) across state lines. Plaintiff told Defendant Barlow's persona that he was driving a white Chrysler Aspen SUV, which Defendant Barlow observed entering the Hyatt Hotel property at Plaintiff's estimated time of arrival with Plaintiff stating shortly after that he, indeed, had arrived.  After Plaintiff was arrested by Defendant Leaser and Defendant Heuser, Defendant Barlow identified the Plaintiff's vehicle as the same one he saw earlier on the Hyatt Hotel property grounds.

Defendants had reasonable grounds to believe that probable cause was present. It was reasonable for law enforcement officers to assume that individuals do not drive seventy (70) miles to meet someone purporting to be a minor late at night, after hours of sexually explicit conversations agreeing to meet, unless they intended to act on those conversations. Furthermore, Plaintiff's claim that he thought was communicating with an adult pretending to be a child is an excuse frequently used by offenders.  If the Plaintiff had honestly thought he was, in reality, speaking with an adult, he could have sought clarification. Therefore, the Defendants had more than enough information to reasonably believe that Plaintiff was "intentionally in contact with a minor" and that he was the individual communicating with Defendant Barlow's 14-year-old persona.

Plaintiff's sudden silence after he told Defendant Barlow's persona that he had arrived at the Hyatt Hotel parking lot, when he had already gone to great lengths to meet, made the Officer's belief that he was a flight risk objectively reasonable. Indeed, even Plaintiff admits he

attempted to leave the Hyatt Hotel property, though he claims he did so, because he changed his mind. Probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts. Rather, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,'" but the degree of suspicion that attaches to particular types of noncriminal acts." *Illinois v. Gates*, 462 U. S. 213, 244, n. 13 (1983) ("probable cause requires only a probability or substantial chance of criminal activity, **not** an actual showing of such activity. By hypothesis, therefore, **innocent** behavior frequently will provide the basis for a showing of probable cause.").  The circumstances here certainly indicate a high likelihood of criminal activity, and that Plaintiff might flee the area before officers could apprehend him.

For qualified immunity to not apply to the Defendants' actions,  the law must be "'sufficiently clear' that every 'reasonable official would understand that what he is doing' " is unlawful.  *Anderson v. Creighton*, 483 U. S. 635, 640 (1987)). Tellingly, Plaintiff has not identified a single precedent—much less a controlling case or robust consensus of cases— finding a Fourth Amendment violation "under similar circumstances." *White v. Pauly*, 137 S. Ct. 548 (2017).  Nor is this an "obvious case" where "a body of relevant case law" is not needed. *Brosseau v. Haugen*, 543 U. S. 194, 199 (2004) (per curiam).  This Court finds that it would not have been clear under well-established law to a reasonable officer that they lacked probable cause or that it was constitutionally impermissible to stop, handcuff, and arrest Plaintiff under the circumstances of this case.  The Defendants are thus entitled to qualified immunity.

### B.    Plaintiff's State Law Claims for False Arrest, False Imprisonment, and Malicious Prosecution.

The Plaintiff also brings Pennsylvania state law claims against Defendants for malicious prosecution, false arrest, and false imprisonment. Though Defendants argue that they are also entitled to immunity from Plaintiff's state law claims under Pennsylvania's Sovereign Immunity

Act, 1 Pa. C.S. § 2310 *et seq.*, and Political Subdivision Tort Claims Act, 42 Pa. C.S.A. § 8546 *et seq.*, Plaintiff never contests this argument in any of his briefing. This Court agrees with the Defendants.

First, this Court finds that Defendant Barlow is immune from Plaintiff's state law claims under Pennsylvania's Sovereign Immunity Act,  1 Pa. C.S. § 2310. In Pennsylvania, sovereign immunity is available to a Commonwealth agency and any employee thereof acting within the scope of their duties. *See* 42 Pa.C.S. § 8501; *Moore v. Commonwealth*, 538 A.2d 111, 115 (Pa. Cmwlth. 1988). This immunity applies except in nine narrow categories of negligence cases: vehicle liability; medical-professional liability; care, custody, or control of personal property; Commonwealth real estate, highways, and sidewalks; potholes and other dangerous conditions; care custody, or control of animals; liquor store sales; National Guard activities; and toxoids and vaccines. 42 Pa. C.S. §8522(b).

Defendant Barlow is a Commonwealth employee, as he works for the Office of Attorney General, a Commonwealth Agency. 65 P.S. § 67.102 (expressly naming the Office of the Attorney General as a "Commonwealth agency").  His interactions with Plaintiff were conducted as a part of a sting operation by his department, and thus he was acting within the scope of his employment when he investigated Plaintiff and assisted in his arrest. None of Plaintiff's state law claims fall within the narrow negligence exceptions to sovereign immunity enumerated in 42 Pa. C.S. §8522(b). Therefore, Special Agent Barlow is entitled to sovereign immunity and is immune from suit as to Plaintiff's state law claims for false arrest, false imprisonment, and malicious prosecution.

This Court also finds that Defendant Leaser and Defendant Heuser are immune from suit as they are entitled to "official immunity" under Pennsylvania's Political Subdivision Tort

Claims Act, 42 Pa. C.S.A. § 8546(2).  The Tort Claims Act insulates a "local agency," such as

the City of Bethlehem Police Department, and its employees from liability for tortious acts,

unless the claim falls within an express exception as enumerated within the statute.  42 Pa.

C.S.A. §§ 8542, 8545.  The eight exceptions set forth in Section 8542(b) permit liability in the

following areas: (1) vehicle liability; (2) care, custody, or control of personal property in

possession of the local agency; (3) care, custody, or control of real property in possession of the

local agency; (4) dangerous condition of trees, traffic signs, lights or other traffic controls, street

lights or street lighting systems under the care custody, or control of the local agency; (5) utility

service facilities; (6) dangerous conditions of streets owned by the local agency; (7) dangerous

conditions of sidewalks within the right-of-way of streets owned by the local agency; and (8)

care, custody, or control of animals in the possession or control of a local agency, including

police dogs and horses. 42 Pa.C.S.A. § 8542(b). The injury must have been "caused by the

negligent acts [not acts or conduct constituting a crime, actual fraud, actual malice or willful

misconduct] of the local agency or an employee thereof acting within the scope of his office or

duties with respect to" one of the eight exception listed in Section 8542(b). 42 Pa.C.S.A. § 8542

(a)(2). Further, local agency employees are immune when the conduct of the employee which

gave rise to the claim was authorized or required by law, or that he in good faith reasonably

believed the conduct was authorized or required by law. 42 Pa. C.S.A.§ 8546(2). This defense is

analogous to qualified immunity in federal claims. *Dorsey v. Redman*, 96 A.3d 332 (2012).

Defendant Leaser and Defendant Heuser, as police officers of the Bethlehem Police

Department are employees of a "local agency." 42 Pa.C.S.A. § 8501 ("Local agency" is defined

as "[a] government unit other than the Commonwealth government.").   Plaintiff's claims, which

do not fall into any of the enumerated exceptions under the Tort Claims Act, involve actions by

Defendant Leaser and Defendant Heuser within the scope of their duties as police officers. Having already determined that Defendant Leaser and Defendant Heuser are entitled to qualified immunity as to Plaintiff's federal claims, official immunity as to Plaintiff's state law claims is also appropriate.

## V.    CONCLUSION

For the reasons discussed above, the Court will grant Defendants' Motion for Summary Judgment.  An appropriate Order will follow.

**IT IS SO ORDERED.**

BY THE COURT:

 /s/ John Milton Younge
**Judge John Milton Younge**